## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JULIAN SANCHEZ MORA, et al., | |
| *Plaintiffs*, | |
| v. | No. 1:24-cv-03136-BAH |
| U.S. CUSTOMS AND BORDER PROTECTION, et al., | |
| *Defendants*. | |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO RECONSIDER DISMISSAL OF
FOIA CLAIM AGAINST DEFENDANT DEPARTMENT OF HOMELAND SECURITY**

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION .................................................................................................................. 1

II.  LEGAL STANDARD .......................................................................................................... 2

III. DEFENDANTS' RESPONSE IS UNAVAILING .................................................................. 2

    A.  Individual FOIA Requests to DHS Are Not Necessary for Plaintiffs' Policy or Practice Claim........................................................................................................... 2

    B.  Plaintiffs Identified Several Clear Errors Requiring Reconsideration of the Dismissal of DHS from Plaintiffs' FOIA Claim.......................................................... 6

    C.  DHS Is a Critical Party. ...................................................................................... 8

    D.  The Definition of "Agency" Favors Reconsideration........................................... 10

    E.  Alternatively, Reinstatement of Plaintiffs' APA Claims Is Necessary to Ensure That Plaintiffs Have a Remedy Against DHS............................................................ 11

IV. CONCLUSION.................................................................................................................... 12

I.      **INTRODUCTION**

Defendants fail to challenge or ignore key points that support Plaintiffs' motion for reconsideration of the Northern District of California's decision dismissing their Freedom of Information Act (FOIA) claim against Defendant U.S. Department of Homeland Security (DHS). In their opposition, Dkt. 81, Defendants do not challenge the arguments and evidence Plaintiffs put forth establishing the pivotal role that DHS plays in overseeing the FOIA processing of its component agency, Defendant U.S. Customs and Border Protection (CBP). Nor do Defendants dispute DHS' role in both causing and not remedying CBP's backlog. Likewise, Defendants ignore Plaintiffs' allegations that DHS, like CBP, has a stated position that it does not have an affirmative obligation to comply with FOIA's statutory deadlines. Indeed, nothing in Defendants' opposition even remotely suggests that DHS is not, like CBP, through its policies or practices, systemically violating 5 U.S.C. § 552(a)(3)(A), (6)(A)-(B).

Plaintiffs' allegations, arguments, and evidence demonstrate that DHS plays a critical role in the policies or practices at issue in this case. In dismissing DHS as a defendant to Plaintiffs' FOIA claim at the motion to dismiss stage, the district court erroneously assessed Plaintiffs' FOIA claim as if it were a claim related to a specific FOIA request against DHS, misapprehended the FOIA regulations, and misrepresented the district court's analysis in *Nightingale v. USCIS*, 507 F. Supp. 3d 1193 (N.D. Cal. 2020). Indeed, DHS is a critical party to Plaintiffs' FOIA claim, and the district court further erred by excluding DHS from FOIA's use of the term "agency."

Reconsideration is required to correct these errors in the district court's analysis and restore Defendant DHS as a defendant to Plaintiffs' FOIA claim. Justice so requires.

## II.     LEGAL STANDARD

Rule 54(b) reconsideration is available "as justice requires," which leaves district courts

with "broad discretion to reconsider earlier orders . . . if there are good reasons for doing so."

*Hurd v. D.C.*, 707 F. Supp. 3d 1, 7 (D.D.C. 2023) (quoting *Cobell v. Jewell*, 802 F.3d 12, 25

(D.C. Cir. 2015), and *Inova Health Care Servs. for Inova Fairfax Hosp. v. Omni Shoreham

Corp.*, No. 20-784 (JDB), 2023 WL 5206142, at *5 (D.D.C. Aug. 14, 2023)) (alternations in

original); *see also* Dkt. 79-1 at 10-11. Thus, reconsideration is available where the court

"patently misunderstood a party, has made a decision outside the adversarial issues presented to

the Court by the parties, has made an error not of reasoning but of apprehension, or where a

controlling or significant change in the law or facts [has occurred] since the submission of the

issue to the Court." *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005)

(quoting *Cobell v. Norton*, 224 F.R.D. 226, 272 (D.D.C. 2004)) (alternations in original); *see

also* Dkt. 81 at 3 (agreeing with standard). But reconsideration is not *limited* to those situations,

as Defendants argue. It is also available, for example, to correct "a clear error in the first order"

or upon "the discovery of new evidence not previously available." *Dunlap v. Presidential

Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 81 (D.D.C. 2018) (quoting *Zeigler

v. Potter*, 555 F. Supp. 2d 126, 129 (D.D.C. 2008)); *see also Cobell*, 224 F.R.D. at 272

("[A]sking 'what justice requires' amounts to determining, within the Court's discretion, whether

reconsideration is necessary under the relevant circumstances.").

## III.     DEFENDANTS' RESPONSE IS UNAVAILING

### A.      Individual FOIA Requests to DHS Are Not Necessary for Plaintiffs' Policy or Practice Claim.

Defendants erroneously claim that a motion for reconsideration is not an appropriate

vehicle to remedy the errors committed by the district court. But where, as here, the district court

2

"patently misunderstood," "made an error . . . of apprehension," and/or made a "clear error" as to

Plaintiffs' arguments regarding DHS, reconsideration is appropriate. *Singh*, 383 F. Supp. 2d at

101; *Dunlap*, 319 F. Supp. 3d at 81; *see also, e.g.*, *Brigida v. Chao*, No. 16-2227 (DLF), 2018

WL 11389503, at *5 (D.D.C. May 31, 2018) (granting reconsideration where transferor court

"misapprehended the nature of [the plaintiff's] request for equitable relief" and the resulting

"errors, if left undisturbed, would work injustice by preventing [the plaintiff] from pursuing

relief to which he may be entitled"). The district court's analysis began and ended with

determining that Plaintiffs did not make FOIA requests to DHS. *See* Dkt. 59 at 15-17. That

determination establishes that the district court misunderstood Plaintiffs' arguments that policy

or practice claims require a different analysis, one that is not dependent on all defendant agencies

receiving individual FOIA requests. *See* Dkt. 47 at 11-13; *see also Hajro v. USCIS*, 811 F.3d

1086, 1102 (9th Cir. 2016) ("We clarify that the Article III requirements for a *specific* FOIA

request claim and a *pattern or practice* claim differ from each other.").

Defendants dispute that Plaintiffs have alleged a policy or practice FOIA claim against

DHS. *See* Dkt. 81 at 5-9.  But this contention is belied by the face of the amended complaint as

detailed in Plaintiffs' motion. *See* Dkt. 79-1 at 6, 13-14 (citing allegations). The operative

complaint clearly alleges that DHS is an integral partner with its subagency CBP in the conduct

and policies which cause a "persistent failure to adhere to FOIA's requirements" for timely

responding to FOIA requests. *Judicial Watch, Inc. v. DHS*, 895 F.3d 770, 780 (D.C. Cir. 2018).

Defendants argue Plaintiffs' lack of individual FOIA requests to DHS is enough, on its own, to

defeat this claim, but the cases they cite are inapposite or irrelevant.

Indeed, Plaintiffs allege: first, that CBP has systemically failed to make determinations

on FOIA requests for individual records and to make records promptly available, Dkt. 42 ¶¶ 1,

3

27-29, 35, 37, 41, 80, 83, 90, 94-99, 103, 106-07, 109; second, that DHS bears responsibility for both causing and failing to remedy this systemic failure, *id.* ¶¶ 8, 30, 38, 81, 91, 108; and third, that CBP's and DHS' policy is that they do not have to comply with FOIA's statutory deadlines, *see id.* ¶¶ 1, 10, 37, 39-40, 82, 93, 105. Plaintiffs make these claims pursuant to the doctrine that a plaintiff may assert a "claim that an agency *policy or practice* will impair the party's lawful access to information in the future," *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988), not as a challenge to DHS' response to any individual FOIA request. Yet despite the fact that policy or practice claims require courts to assess whether a "pattern of prolonged delay" that "will interfere with [the plaintiff's] right under FOIA to promptly obtain non-exempt records from the agency in the future" exists, *Judicial Watch, Inc.*, 895 F.3d at 780 (D.C. Cir. 2018), the district court assessed *only* whether Plaintiffs met the requirements for challenging an individual FOIA request against DHS when it found that they did not allege a FOIA claim against DHS. *See* Dkt. 59 at 15-17. Defendants merely repeat this assessment. Dkt. 81 at 5-9. But this is not the correct inquiry, and therefore Defendants' cited cases fail to address whether Plaintiffs properly stated a *policy or practice* claim against DHS.

Defendants appear to argue that policy or practice FOIA claims can only stem from individual FOIA requests to *all* named defendants because previous policy or practice claims have sought prospective relief from the same agency or subagency named in claims challenging the mishandling of individual FOIA requests. *See* Dkt. 81 at 6-7. But the cited cases simply do not address whether policy or practice claims may also name additional defendants necessary to remedy the "policy or practice" that produces a "pattern of prolonged delay" and "will interfere with [the plaintiff's] right under FOIA to promptly obtain non-exempt records from the agency in the future." *Judicial Watch*, 895 F.3d at 780.

4

For example, in *Judicial Watch*, the plaintiffs submitted FOIA requests to the U.S. Secret Service, a subagency of DHS. 895 F.3d at 773. After the Secret Service exhibited a pattern of failing to promptly respond to the requests, the plaintiff sought judicial review of this policy and practice, as well as the individual FOIA requests, naming DHS as the defendant for both counts. *Id*. at 774. Contrary to Defendants' assertion, Dkt. 81 at 7, the D.C. Circuit simply did not address the respective roles of DHS and the Secret Service in ruling on the plaintiff's pattern or practice claim. Thus, if anything, the decision supports the viability of a pattern or practice claim against DHS in this case. Similarly, in *Payne*, the plaintiffs only challenged the Air Force's pattern of failing to adequately respond to FOIA requests such that their "*policy or practice* will impair [the plaintiff's] lawful access to information in the future." 837 F.2d at 491. Again, the D.C. Circuit did not have cause to address the role of the various subagencies and parent agency (in that case, the U.S. Department of Defense) involved in ensuring that the policy or practice would be corrected. *See also Newport Aeronautical Sales v. Dep't of Air Force*, 684 F.3d 160 (D.C. Cir. 2012) (not addressing which agencies can provide relief to pattern and practice claims). Notably, like the plaintiffs in those cases, Plaintiffs here alleged that they *did* submit proper FOIA requests—to CBP. *See, e.g.*, Dkt. 42 ¶ 1. However, they *also* alleged that both DHS and CBP together have a policy or practice leading to CBP's systemic failure to timely produce records and make determinations, including their stated positions that compliance with FOIA's statutory deadlines is not mandatory. *Id.*  ¶¶ 3, 5-6, 8, 10, 25, 29-31, 37-40, 42, 81-82, 91, 93, 105, 108. Thus, Plaintiffs have plausibly alleged that CBP and DHS are proper Defendants to the FOIA policy or practice claim, and there is nothing preventing the Court from finding that DHS was properly named as a defendant in this matter. *See, e.g.*, *Center for Study of Services v. Department of Health & Human Services*, 874 F.3d 287, 289-90 (D.C. Cir. 2017) (addressing

policy or practice claim against both the Department of Health & Human Services and subagency Centers for Medicare and Medicaid Services (CMS) after plaintiff submitted requests only to CMS).

Defendants also place undue reliance on the fact that, *in cases challenging responses or failures to respond to individual FOIA requests*, courts require an underlying "proper FOIA request" with the relevant agency, because agencies are not required to timely respond absent a proper request. Dkt. 81 at 5-6 (quoting *CREW v. Fed. Election Comm'n*, 711 F.3d 180, 185 n.3 (D.C. Cir. 2013)). But that is entirely irrelevant here. Plaintiffs acknowledged that basic premise in their motion but explained that different requirements apply to policy or practice claims. Dkt. 79-1 at 11-13. They do not seek to remedy DHS' failure to respond to or withhold records in any individual FOIA request.

### B.      Plaintiffs Identified Several Clear Errors Requiring Reconsideration of the Dismissal of DHS from Plaintiffs' FOIA Claim.

Contrary to Defendants' assertion, Dkt. 81 at 8, reconsideration to correct the district court's clear errors and/or misunderstanding and misapprehension of Plaintiffs' arguments is appropriate and necessary. *See Singh*, 383 F. Supp. 2d at 101; *Dunlap*, 319 F. Supp. 3d at 81. Plaintiffs identified several clear errors in the district court's dismissal of DHS as a defendant. *See* Dkt. 79-1 at 11-17. These errors stem from the fact that the district court erroneously analyzed Plaintiffs' FOIA claim as if it related to a specific FOIA request, rather than a policy or practice claim. *See supra* Section III.A. In doing so, the district court improperly relied on DHS' "decentraliz[ation]" regulations, which only govern specific individualized FOIA requests, and disregarded the contrary findings of the court in *Nightingale. See* Dkt. 59 at 15-17.

First, the entirety of the district court's opinion dismissing DHS as a defendant to Plaintiffs' FOIA claim does not mention, let alone analyze, Plaintiffs' claim as a policy or

practice claim. *See id*. For that reason, as Plaintiffs have argued, *see* Dkt. 79-1 at 11-17 and

*supra* Section III.A., their challenge is not contingent upon the submission of any individual

FOIA request; instead, it concerns whether the challenged conduct results in a "persistent failure

to adhere to FOIA's requirements," *Judicial Watch*, 895 F.3d at 780. Similarly, the district

court's explanation for dismissing DHS fails to address Plaintiffs' challenge to both CBP's and

DHS' position that FOIA's deadlines are not affirmative obligations. *See* Dkt. 42 ¶¶ 1, 10, 37,

39-40, 82, 93, 105.

Likewise, the district court "patently misunderstood" Plaintiffs' arguments regarding

DHS' decentralization regulations at 6 C.F.R. §§ 5.1(c), 5.3(a), 5.4(a). *Singh*, 383 F. Supp. 2d at

101 (citation omitted); *see also* Dkt. 79-1 at 15-16. These regulations, which require filing

*specific* FOIA requests with the relevant component agency, are inapplicable to policy or

practice claims. Although the district court concluded otherwise, the court did not cite a single

circuit court policy or practice case in its analysis, instead relying only on cases involving

requests for specific records. *See* Dkt. 59 at 15-16.

Moreover, although the district court attempted to distinguish the case most applicable to

the instant litigation, that decision plainly contradicts the court's rationale. In *Nightingale*, the

district court expressly found that, with respect to a pattern or practice claim, DHS bears

responsibility for overseeing its component agencies' FOIA programs. The court in *Nightingale*

specifically rejected the notion that DHS could disclaim its role in plaintiffs' pattern and practice

claim based on decentralization of the FOIA process, calling it "[n]onsense." 507 F. Supp. 3d at

1204 n.10. Thus, Judge Orrick was acutely aware that specific FOIA requests had not been filed

with DHS but nevertheless correctly understood that neither filing with DHS nor the

decentralization regulations were relevant to assessment of a policy or practice claim against

DHS. Thus, the district court's claim in this matter that the viability of a nearly identical policy or practice claim under FOIA "was not before the *Nightingale* court," Dkt. 59 at 16, is clearly erroneous as evidenced by the *Nightingale* decision itself.

### C.    DHS Is a Critical Party.

In their complaint allegations and opposition to dismissal of DHS as a defendant, Plaintiffs argued that DHS is an essential party to this lawsuit. Plaintiffs alleged that DHS, as CBP's parent agency, bears ultimate responsibility both for ensuring that CBP complied with the FOIA and for its policy or practice of failing to do so, *see, e.g.*, Dkt. 42 ¶¶ 8, 25, 30, 38, 108; has failed in its obligation to ensure that CBP had sufficient financial and staffing resources to handle FOIA requests and reduce its backlog, *id.* ¶¶ 8, 36, 38; has failed to ensure that CBP makes reasonable progress in reducing its backlog, *id.* ¶ 38; and has a policy that 5 U.S.C. § 552(a)(6)(A)(i) and (B)(i) do not impose an affirmative obligation or require CBP to make a determination within the specified statutory timeframe, *id.* ¶¶ 1, 39, 40, 105. Similarly, in their Opposition to Defendants' Motion to Transfer or Dismiss, Plaintiffs argued that DHS "bears responsibility for [CBP's] systemic failure to timely make FOIA determinations." Dkt. 47 at 11. Plaintiffs also discussed cases finding DHS responsible for the failure of its components to comply with FOIA, *id.* at 11-12; and described DHS' role in CBP's failures as "pivotal," *id.* at 12. Given the detailed substance of Plaintiffs' allegations and argument, Defendants err in contending that Plaintiffs are, for the first time, presenting "'theories or arguments that could have been advanced earlier.'" Dkt. 81 at 9 (quoting *Dunlap*, 319 F. Supp. 3d at 81).

Not only did Plaintiffs previously present this theory and argument, they also have demonstrated that it is essential for DHS to be included as a defendant for this Court to "accord complete relief," Fed. R. Civ. P. 19(a)(1)(A), contrary to Defendants' contention otherwise, *see* Dkt. 81 at 10-11. Both the district court and Defendants err in describing the "gravamen" of Plaintiffs'

complaint as limited to CBP's policy or practice of failing to comply with the FOIA statute. Dkt. 81 at 10 (quoting Dkt. 59 at 17). This ignores entirely Plaintiffs' detailed allegations as to the "pivotal" role which DHS plays in ensuring (or failing to ensure) that CBP complies with the statutory deadlines, not least of which is ensuring that its component has sufficient funding and staffing to do so. *See* Dkt. 79-1 at 18-21.

That "CBP is a proper party to this lawsuit," Dkt. 81 at 10, is not in dispute. Thus, Defendants' reliance on *Cloonan v. Holder*, 768 F. Supp. 2d 154, 162 (D.D.C. 2011), for the proposition that a component *can be* a defendant to a privacy suit is inapposite. *See* Dkt. 81 at 10. Moreover, Defendants acknowledge, as they must, that *Holt v. Dep't of Justice*, 734 F. Supp. 2d 28, 33 n.1 (D.D.C. 2010), supports Plaintiffs' position that naming the parent agency is appropriate. Dkt. 81 at 10. But even the fact that courts within this Circuit are divided on whether to name parent agencies or their subcomponents as defendants in litigation on *individual* FOIA requests, *see, e.g.*, *Earle v. Dep't of Just.*, 217 F. Supp. 3d 117, 119 n.1 (D.D.C. 2016) (discussing cases), does not speak to Plaintiffs' position that DHS is critical to realizing, and ensuring compliance with, any relief afforded by this Court in a policy or practice claim.[1]

Similarly, that "CBP would be bound by any decision this Court issues in favor of Plaintiffs," *see* Dkt. 81 at 11, is uncontested and not germane to Plaintiffs' motion for reconsideration. The point is that an injunction against DHS is *also* necessary and would not be

---

[1]    Moreover, that courts in *this Circuit* have treated parent agencies as "the proper party defendant" even in individual FOIA suits challenging inadequate responses to individual FOIA requests, *see Holt*, 734 F. Supp. 2d at 33 n.1, is yet another reason that reconsideration of the district court's decision in this case is appropriate after transfer. *Cf. Singh*, 383 F. Supp. 2d at 101 (providing for reconsideration where, inter alia, there has been "a controlling or significant change in the law or facts has occurred since the submission of the issue to the Court") (citation omitted). If, as courts in this circuit have correctly concluded, parent agencies are property defendants in suits challenging the mishandling of individual FOIA requests, then surely they are also proper party defendants where a plaintiff (or plaintiffs) brings a policy or practice claim seeking to ensure requesters' rights are fulfilled in the future.

"duplicative." *Id*. DHS' FOIA Program is responsible for the coordination, direction, and oversight of its component agencies with respect to FOIA processing. *See* Dkt. 79-7 ¶¶ 4, 7-12; Dkt. 79-4 at 21:3–10; Dkt. 79-5 at 6-7; *see also* Dkt. 79-6 at 88276. Thus, DHS' resources, oversight, and coordination are essential to CBP's ability to comply with any relief ordered by this Court. Moreover, DHS and CBP both take the position that FOIA's statutory deadlines are not mandatory; complete relief to remedy this policy cannot be afforded if DHS, as CBP's parent agency, is not also required to adhere to FOIA's deadlines as obligatory.

In sum, DHS is ultimately responsible for CBP's failures and, as the parent agency, is required to provide both the resources and oversight critical to remedy CBP's noncompliance. As Plaintiffs demonstrated in their motion, both prongs of Rule 19 are satisfied because DHS is essential to the provision of "complete relief" to Plaintiffs, CBP is not suited to protect DHS' interest, and any injunction against CBP alone subjects it to a substantial risk of incurring double and/or multiple obligations from DHS with respect to FOIA processing, including metric, resources, and processing. *See* Fed. R. Civ. P. 19(a)(1)(A)-(B).

### D.        The Definition of "Agency" Favors Reconsideration.

Defendants continue to fundamentally misunderstand Plaintiffs' argument in dismissing the relevance of the definition of "agency" under FOIA. Dkt. 79-1 at 22-24. Plaintiffs expound upon the definition of "agency" under FOIA not to present a novel argument that could have been "advanced earlier," Dkt. 81 at 11, but instead, to demonstrate "a clear error in the first order," *Dunlap*, 319 F. Supp. 3d at 81 (citation omitted). Namely, the district court's ruling that DHS was not properly sued because it did not itself receive Plaintiffs' FOIA requests, Dkt. 59 at 15-17, ignores that, as Plaintiffs argued, "[i]n certain FOIA provisions . . . the term 'agency' appl[ies] only to the parent entity and not each component of that entity," Dkt. 79-1 at 23.

Defendants simply recite the district court's reasoning that "Plaintiffs did not submit any FOIA request to DHS." Dkt. 81 at 12. In doing so, they fail to meaningfully engage with the statutory provisions demonstrating that the scope of 5 U.S.C. § 552(a)(4)(B) is not limited to the component agency that received the FOIA request. DHS, and not each of its components, carries out core statutory mandates for the systematic implementation of FOIA, such as promulgating regulations, *id.* § 552(a)(1), (a)(4)(A)(i), submitting annual reports, *id.* § 552(e)(1), and appointing a Chief FOIA officer, *id.* § 552(j)(1). These provisions demonstrate that any failure by CBP to adhere to FOIA's timeliness requirements is, by definition, a failure of DHS' overarching policies and practice. Therefore, the district court erred in construing FOIA as a "decentralized framework," Dkt. 59 at 16, and thus interpreting § 552(a)(4)(B) to apply only to the component agency that received the records request, *see id.* at 15-17. The definition of "agency" as used throughout FOIA demonstrates that Plaintiffs' policy or practice claim properly lies against DHS for its systematic failure to ensure timely disclosure and should not be dismissed.

**E.    Alternatively, Reinstatement of Plaintiffs' APA Claims Is Necessary to Ensure That Plaintiffs Have a Remedy Against DHS.**

Defendants would have this Court deny Plaintiffs *any* relief against DHS. On the one hand, Defendants defend the district court's dismissal of DHS as a proper defendant to Plaintiffs' FOIA claim. Dkt. 81 at 4-12. On the other hand, they also argue that Plaintiffs are not entitled to a remedy against DHS under the APA. *Id*. at 12-14. Both cannot be true.

Because DHS is an essential party to the lawsuit, *see supra* at Section III.C., any remedy that does not include DHS likely will be inadequate. Yet, the district court found Plaintiffs' APA claims to be precluded only where "there is an adequate remedy under another source of law, which in this case, is FOIA." Dkt. 59 at 4 (footnote omitted); *see also* Dkt. 79-1 at 24-25. The

11

Supreme Court has made clear that "[a]n alternative remedy will not be adequate under [the APA] if the remedy offers only 'doubtful and limited relief.'" *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 901 (1988)). Here, given the allegations of DHS' integral role in the case, Plaintiffs require a remedy against DHS. This is particularly true given that DHS was dismissed prior to any discovery which would address DHS' role. For these reasons, should the Court find that DHS is not a proper defendant with respect to Plaintiffs' FOIA claim, it should reinstate Plaintiffs' APA claims.

## IV.    CONCLUSION

For the foregoing reasons and the reasons stated in Plaintiffs' motion and accompanying memorandum of law and exhibits, reconsideration and vacatur of the Northern District of California's decision dismissing Plaintiffs' FOIA claim against DHS is warranted.[2]

Respectfully submitted,

| | |
|---|---|
| s/*Trina Realmuto* | s/*Matt Adams* |
| Trina Realmuto* | Matt Adams* |
| trina@immigrationlitigation.org | matt@nwirp.org |
| | |
| s/*Mary Kenney* | s/*Leila Kang* |
| Mary Kenney (DC SBN 1044695) | Leila Kang* |
| mary@immigrationlitigation.org | leila@nwirp.org |
| | |
| s/*Kristin Macleod-Ball* | NORTHWEST IMMIGRANT RIGHTS PROJECT |
| Kristin Macleod-Ball* | 615 Second Avenue, Suite 400 |
| kristin@immigrationlitigation.org | Seattle, WA 98104 |
| | (206) 957-8611 |
| s/*Tomás Arango* | |
| Tomas Arango* | s/*Marc Van Der Hout* |
| tomas@immigrationlitigation.org | Marc Van Der Hout* |
| | |
| | s/*Johnny Sinodis* |
| NATIONAL IMMIGRATION | Johnny Sinodis* |
| LITIGATION ALLIANCE | |
| 10 Griggs Terrace | VAN DER HOUT LLP |
| Brookline, MA, 02446 | 360 Post St., Suite 800 |

---

[2]    Alternatively, reinstatement of Plaintiffs' APA claims against DHS is warranted.

(617) 819-4447                                    San Francisco, CA 94108
                                                 (415) 981-3000
*Admitted pro hac vice*                           ndca@vblaw.com


                          *Attorneys for Plaintiffs*

Dated: March 14, 2025

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 14, 2025, I electronically filed the foregoing document

with the Clerk of the Court for the United States Court of for the District of Columbia by using

the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be

accomplished by the CM/ECF system.

<u>s/Kristin Macleod-Ball</u>
Kristin Macleod-Ball
National Immigration Litigation Alliance