# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JULIAN SANCHEZ MORA, *et al.*,

     *Plaintiffs*,

        v.

U.S. CUSTOMS AND BORDER
PROTECTION, *et al.*,

     *Defendants*.

Case No. 1:24-cv-03136-BAH

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION

### (ORAL ARGUMENT REQUESTED)

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION…………………………………………………………..  1

II.     BACKGROUND……………………………………………………………  2

    A. Importance of CBP Records……………………………………………..  3

    B. CBP Processing Time and Backlog……………………………………...  6

    C. Named Plaintiffs' Factual Backgrounds………………………………….  7

III.    THE COURT SHOULD CERTIFY THE PROPOSED CLASS. ………………….  9

    A. The Proposed Class Meets All Requirements of Federal Rule of Civil
       Procedure 23(a). ………………………………………………………….  11

       1. The proposed class members are so numerous that joinder is impracticable..  11

       2. The class presents common questions of law and fact………………………  15

       3. Plaintiffs' claims are typical of the claims of the members of the proposed
          class…………………………………………………………………………..  19

       4. Plaintiffs will adequately protect the interests of the proposed class, and
          counsel are qualified to litigate this action…………………………………...  20

          a. Named Plaintiffs……………………………………………………….  20

          b. Counsel………………………………………………………………...  21

    B. The Proposed Class Satisfies Federal Rule of Civil Procedure 23(b)(2)…...........  21

IV.     CONCLUSION……………………………………………………………..  23

I.    **INTRODUCTION**

Plaintiffs challenge two policies or practices of Defendants U.S. Customs and Border

Protection (CBP) and U.S. Department of Homeland Security (DHS). First, they challenge

CBP's systemic failure to timely make determinations on FOIA requests for individual records,

for which DHS—as CBP's parent agency—shares responsibility for failing to abide by the

statutory deadlines and failing to remedy CBP's noncompliance. Second, and relatedly, they

challenge Defendants' position that they do not have an affirmative obligation to comply with

the FOIA's statutory deadlines. These policies or practices violate 5 U.S.C. § 552(a)(3)(A),

(6)(A)-(B).

Plaintiffs are attorneys and individuals who seek records that pertain to their clients and

themselves, respectively, including records related to an individual's entry into and/or exit from

the United States, admission, criminal history, and records of inspection, apprehension, or

interaction with CBP employees. These records are critical to determining eligibility and

gathering critical information required for, among other things, (1) applications for immigration

benefits, including lawful permanent residence, naturalization, and acquisition of citizenship; (2)

defending against deportation; (3) responding to automobile seizures; (4) and investigating

damages claims based on tortious or unconstitutional conduct by CBP employees.

The FOIA requires Defendants to respond to FOIA requests within 20, or at most, 30

business days. *See* 5 U.S.C. § 552(a)(6)(A), (B). CBP has a pattern or practice of failing to make

determinations on FOIA requests within the statutory timeframe; indeed, CBP generally takes

over six months, and sometimes longer than one year, to respond. CBP's last reported backlog of

FOIA request stands at an astonishing 110,271 requests, the highest of all DHS component

agencies, and close to 90,000 more than it was two years ago. DHS has contributed to CBP's

processing failure and backlog by, inter alia, failing to allot sufficient resources and staffing to FOIA processing.

Whether Defendants' failure to adjudicate FOIA requests within 30 business days violates the FOIA and whether Defendants have an affirmative obligation to comply with FOIA's statutory deadlines are legal questions that can and should be resolved on a class-wide basis. Pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), Plaintiffs ask this Court to certify the following class:

> All persons who filed, or will file, FOIA requests with CBP for an individual's records which have been pending, or will be pending, with CBP for more than 30 business days without a determination.
>
> For purposes of the class definition, and notwithstanding whether CBP internally classifies a request as simple or complex, a FOIA request for individual records means a request for records related to an individual, including the individual's entry into and/or exit from the United States; admission, withdrawal of admission, or denial of admission to the United States; criminal history; apprehension, inspection by, or interactions with, CBP employees; and removal, deportation, exclusion, voluntary return, and/or expulsion under any provision of the Immigration and Nationality Act or 42 U.S.C. § 265.

Plaintiffs further request that the Court designate as class representatives Plaintiffs Julian Sanchez Mora, Siobhan Waldron, Carlos Moctezuma García, Ali Ainab, Rafael Edgardo Flores Rodriguez, and Beatriz Ariadna Garcia, and appoint the undersigned as class counsel. Plaintiffs seek to pursue declaratory and injunctive relief on a classwide basis because Defendants' systemic violation of the FOIA adversely affects tens of thousands of FOIA requesters who, like Plaintiffs, need individual records related to their clients or themselves and, absent a court order, will continue to be harmed.

## II.    BACKGROUND

The FOIA requires agencies to make a determination on FOIA requests within 20 business days. 5 U.S.C. § 552(a)(6)(A)(i). In the case of "unusual circumstances," with a limited

exception not relevant here, an agency may extend its response time by no more than 10 working days, provided it sends the requestor "written notice." 5 U.S.C. § 552(a)(6)(B)(i). CBP has a policy or practice of failing to make a determination within this statutory timeframe, even when processing straightforward FOIA requests for an individual's immigration or travel records.

### A.    Importance of CBP Records

DHS and CBP maintain records of, *inter alia,* individuals' history of international travel to and from the United States.[1] These records also include information relating to apprehensions, detentions, or inspections of an individual by CBP agents, as well as expedited removal orders, voluntary returns, withdrawn applications for admission, and expulsions. *Id.* This information is often vital, for instance, to understand the precise nature of an individual's immigration status in the United States and related immigration or criminal background.

Indeed, attorneys file CBP FOIA requests to obtain records necessary to understand and advise their clients about their eligibility for immigration benefits, to defend against removal, or assess the availability of post-conviction relief.[2] Individuals also routinely seek CBP records of their own travel history and/or any apprehensions, detentions, or inspections to complete

---

[1]    *See* U.S. Customs & Border Prot., *Request Records Through the Freedom of Information Act*, https://www.cbp.gov/site-policy-notices/foia/records (last updated Oct. 4, 2024).

[2]    *See, e.g.*, Dkt. 9-1 ¶¶ 4-5; Dkt. 9-2 ¶ 7; Dkt. 9-3 ¶¶ 8-9; Exh. C-1, Second Declaration of Annelise Araujo, ¶¶ 2, 6; Exh. C-2, Second Declaration of Meredith Brown, ¶¶ 2, 5; Exh. C-3, Second Declaration of Lizz Cannon, ¶¶ 2, 4; Exh. C-4, Second Declaration of Monica Kane, ¶¶ 2, 5; Exh. C-5, Second Declaration of Mahsa Khanbabai, ¶¶ 2, 6; Exh. C-6, Second Declaration of Rekha Nair, ¶¶ 2, 3; Exh. C-7, Second Declaration of Kelly L. Ryan, ¶¶ 2, 5; Exh. C-8, Second Declaration of Samantha Marie Sitterley, ¶¶ 2, 6; Exh. C-9, Second Declaration of Bardis Vakili, ¶¶ 3-4; Exh. C-10, Second Declaration of Elizabeth A. Wood, ¶¶ 2, 5; Exh. C-11, Declaration of Jorge E. Munoz, ¶¶ 4, 7-10; Exh. C-12, Second Declaration of Jennifer M. Mashek, ¶ 2; and Exh. C-13, Second Declaration of Austin Nielsen-Reagan, ¶ 2; *see also Brown v. CBP*, 132 F. Supp. 3d 1170, 1174 (N.D. Cal. 2015) ("It is more than plausible to infer that [Plaintiff immigration attorneys] will continue to make regular FOIA requests for the CBP documents that are critical for their work, and continue to experience improper delays.")

applications for immigration benefits or relief, to defend against removal, or to demonstrate residence in the United States.[3] The only way to obtain a copy of an individual's CBP records is to submit a FOIA request. This is true even for individuals in removal proceedings in immigration court, as FOIA is the primary mechanism for accessing immigration case file information because discovery is not available.[4] Immigration attorneys regularly file FOIA requests with CBP to obtain the history of a client's travel to and from the United States, to determine whether the client has ever been apprehended, detained, or inspected by CBP, or otherwise interacted with CBP agents. CBP's website encourages that such requests be made through the FOIA SecureRelease Portal.[5]

Given that years may have passed between an individual's entry and the point at which they need CBP records. The FOIA often provides the only mechanism for an individual to obtain necessary information, as many were either not provided copies of documents by CBP, have lost the relevant paperwork, or have forgotten the details of their travel history. In such cases, filing a FOIA request with CBP is the only mechanism to obtain this crucial information.[6]

Defendants' delays in responding to FOIA requests for individual records severely disadvantage attorneys, their clients, and those who seek their own records without the assistance of counsel. Without CBP records, attorneys often cannot fully assess a client's eligibility for immigration relief, including whether they are eligible to naturalize or acquire citizenship. For

---

[3]     *See, e.g.*, Dkt. 9-5 ¶¶ 4, 6; Exh. B, Declaration (Decl.) of Beatriz Garcia Mixcoa, ¶¶ 3-4.
[4]     *See Nightingale v. USCIS*, 507 F. Supp. 3d 1193, 1199 (N.D. Cal. 2019) (finding that "[a]dherence to FOIA's timeframes is critical because there is no adequate substitute for the information contained in an [immigration case file] and FOIA is the primary, if not the only, mechanism for accessing [those files]"); *see also, e.g.*, Exh. C-7, Second Sitterley Decl. ¶ 6b; Exh. C-9, Second Vakili Decl. ¶ 3; Exh. C-11, Munoz Decl. ¶ 10.a.
[5]     *See* U.S. Customs & Border Prot., *Request Records Through the Freedom of Information Act*, https://www.cbp.gov/site-policy-notices/foia/records (last updated Oct. 4, 2024).

example, generally, under 8 U.S.C. § 1255(a), noncitizens must demonstrate they were

"inspected and admitted or paroled into the United States" in order to adjust to lawful permanent

resident status. CBP records are often the only source to demonstrate whether a person was

"inspected," "admitted," or "paroled" into the country. Likewise, CBP records often indicate the

person's arrival date to the United States, which is critical to calculating the one-year filing

deadline for an asylum application.[7] Furthermore, eligibility for certain forms of immigration

relief and for naturalization or acquisition of U.S. citizenship through a parent require proof of

residence/physical presence in the United States for certain lengths of time.[8]

CBP records also are critical to defending against deportation.[9] Delays in receipt of CBP

records may require attorneys to postpone filing for immigration benefits, delay challenging

expedited removal orders, or compel them to request continuances of immigration hearings,[10]

---

[7]     *See* 8 U.S.C. § 1158(a)(2)(B); *see also, e.g.*, Dkt. 9-3 ¶ 8 (noting need for CBP records to
ascertain asylum filing deadline); Exh. C-11, Munoz Decl. ¶ 7 (explaining that, due to lack of
CBP records, client risked denial of asylum on procedural grounds).

[8]     8 U.S.C. § 1229b(a)(2), (b)(1)(A) (setting residence and physical presence requirements
for cancellation of removal); 8 U.S.C. §§ 1427(a)-(c), 1433(a)(2); Dkt. 9-5 ¶¶ 4, 6 (describing
need for CBP records to prove U.S. residence to U.S. consular officials so that children can
acquire U.S. citizenship).

[9]     *See, e.g.*, Dkt. 9-1 ¶¶ 5, 9 (explaining that delays in CBP FOIA responses impede
counsel's ability to provide comprehensive advice regarding potential immigration benefits and
relief from removal and to assess the viability of post-conviction relief); Exh. C-8, Second
Sitterley Decl. ¶ 6b (explaining that delay prevented client from arguing in removal proceedings
that her rights were violated in CBP custody); Exh. C-9, Second Vakili Decl. ¶ 4 (explaining that
CBP records are necessary to determine whether individuals can challenge removal proceedings
based on unlawful arrests); Exh. C-11, Munoz Decl. ¶ 10a (explaining that client in removal
proceedings has been unable to obtain records relevant to her eligibility for relief despite filing
CBP FOIA request 7 months ago).

[10]    As a general matter, immigration judges need not, and often do not, grant continuance to
await responses to long pending FOIA requests. *See, e.g.*, *Ruiz v. Mukasey*, 272 F. App'x 107,
109-10 (2d Cir. 2008) (finding no due process violation or abuse of discretion where
immigration judge denied continuance request where new counsel had, inter alia, yet to receive a
response to a FOIA request).

which may delay their clients' immigration cases or receipt of lawful status.[11] Noncitizens also

are disadvantaged if their attorneys do not have the paperwork from their previous CBP

encounters—information that may be necessary to, inter alia, challenge the validity of a prior

CBP-issued removal order, or file a damages claim based on tortious conduct by CBP officers.[12]

### B.    CBP Processing Time and Backlog

CBP has a FOIA backlog that both reflects and contributes to its failure to comply with

the statutory deadlines for processing FOIA requests. DHS defines a backlog in the FOIA

context as "[t]he number of requests or administrative appeals that are pending at an agency at

the end of the fiscal year that are beyond the statutory time period for a response." Exh. A, Fiscal

Year (FY) 2024 DHS FOIA Report at 6.[13] Notably, CBP's FOIA backlog has increased over

one-hundred-fold in the past seven years. After a settlement in a prior class action challenging

CBP's FOIA processing delays, the backlog significantly decreased to 1,172 in FY 2016 and

---

[11]    *See, e.g.*, Dkt. 9-2 ¶ 8 (explaining that delays in CBP FOIA responses may prevent clients from applying for adjustment status or an immigrant visa); Exh. B-1, Garcia Mixcoa Decl. ¶¶ 4, 6 (explaining lack of timely FOIA response delayed application for asylum); Exh. C-4, Second Kane Decl. ¶ 5b (explaining that delay is preventing client from determining eligibility to proceed with an immigrant visa application at a U.S. consulate abroad); Exh. C-6, Second Nair Dec. ¶ 3 (explaining delays impeded clients' ability to seek U-visas and adjustment of status); Exh. C-7, Second Ryan Decl. ¶ 5 (explaining that delays are preventing clients from pursuing relief under the Violence Against Women Act, adjustment of status, a T visa application, and advance parole).

[12]    *See, e.g.*, Dkt. 9-3 ¶ 7 (explaining need for CBP records to determine whether client has a basis to file a damages claim); Exh. C-9, Second Vakili Decl. ¶ 3 (explaining that delays prevented attorney from assessing whether clients were unlawfully arrested and detained by CBP).

[13]    DHS, *Fiscal Year 2024 Freedom of Information Act Report to the Attorney General of the United States and the Director of the Office of Government Information Services* 6 (Mar. 2025) (excerpts attached as Exhibit A and available online at https://www.dhs.gov/sites/default/files/2025-05/0505_25-PRIV-FOIA-Annual-Report-FY-2024-PDF.pdf). Hereinafter, references to DHS FOIA Reports are to Freedom of Information Act Reports to the Attorney General of the United States and/or the Director of the Office of Government Information Services, available at https://www.dhs.gov/foia-annual-reports.

1,008 in FY 2017. Fiscal Year (FY) 2016 DHS Report at 17, 19; FY 2017 DHS Report at 16, 19; *Brown v. CBP*, 132 F. Supp. 3d 1170, 1171 (N.D. Cal. 2015). At the end of FY 2024, however, CBP's backlog consisted of 110,271 requests, the highest of all DHS component agencies. Exh. A, FY 2024 DHS FOIA Report at 31, 33. Thus, CBP's backlog is close to 90,000 more than it was two years ago. *See* Dkt. 42 ¶ 5.

CBP and DHS have failed to allocate sufficient financial or staffing resources to CBP's FOIA operations despite the significant growth in the number of FOIA requests and persistent backlogs. *See* Dkt. 42 ¶¶ 7-8, 36-38. For example, in FY 2021, CBP received 108,177 FOIA requests and had 71 full-time FOIA personnel. FY 2021 DHS FOIA Report at 15, 27. By FY 2024, the number of FOIA requests increased by 65.02% (178,517), but the number of full-time personnel only increased by 12.68% (80). *See* Exh. A, FY 2024 DHS FOIA Report at 16, 29.[14]

### C.    Named Plaintiffs' Factual Backgrounds

Plaintiffs Julian Sanchez Mora, Siobhan Waldron, and Carlos Moctezuma García are immigration attorneys (Attorney Plaintiffs) who regularly file FOIA requests with CBP on behalf of their clients. They file these requests to assess their clients' eligibility for immigration benefits, defend against deportation, and assess the availability of post-conviction relief, and they will continue to file such requests in the future. Dkt. 42 ¶¶ 18-20, 52-60; *see also* Dkt. 9-1 ¶¶ 3-5; Dkt. 9-2 ¶¶ 3, 7; Dkt. 9-3 ¶¶ 3, 7-8. Plaintiffs Sanchez Mora, García*,* and Waldron had requests that were pending with CBP without a determination for more than 30 business days at the time the Complaint was filed. Plaintiffs Sanchez Mora and García each had a FOIA request

---

[14]    As CBP's parent agency, DHS must ensure CBP's compliance with the FOIA, including by allocating sufficient financial and staffing resources. Dkt. 42 ¶¶ 8, 25, 30, 38, 81, 91, 108. DHS is aware of CBP's backlog. *Id*. ¶¶ 5, 8, 29, 31. In fact, DHS introduced the processing system CBP now employs—Secure Release—purportedly "to process records faster." *Id*. ¶ 6.

pending for nearly a year and a half, since October and December 2022, respectively, at the time the original Complaint was filed. Dkt. 1 ¶¶ 47, 53; *see also* Dkt. 9-1 ¶¶ 6-7; Dkt. 9-3 ¶¶ 4-5. Plaintiff Waldron had a CBP FOIA request that has been pending for over 10 months. Dkt. 1 ¶ 50; *see also* Dkt. 9-2 ¶¶ 4-5.

Plaintiffs Ali Ainab, Rafael Edgardo Flores Rodriguez, and Beatriz Ariadna Garcia Mixcoa (Individual Plaintiffs) are individuals who filed FOIA requests with CBP to obtain their own immigration records. Dkt. 42 ¶¶ 21-23. Plaintiff Ainab is a U.S. citizen who filed a FOIA request with CBP on December 22, 2023, to obtain records related to his entries and exits from the United States needed to demonstrate that his two youngest children abroad have acquired U.S. citizenship. Dkt. 42 ¶¶ 61-62; *see also* Dkt. 9-5 ¶¶ 4, 6. Mr. Ainab's FOIA request had been pending with CBP for more than seven months at the time the amended Complaint was filed. Plaintiff Rodriguez is a lawful permanent resident (LPR) who filed a FOIA request with CBP on June 23, 2023. Dkt. 42 ¶ 63. At the time of his FOIA request, he had not submitted his application for adjustment of status and was seeking records related to his lawful entry into the United States, which he needed to establish his eligibility to become an LPR on the basis of his status as an immediate relative of his U.S.-citizen son. *Id.* ¶ 64. Mr. Flores Rodriguez's FOIA request had been pending with CBP for more than a year at the time the amended Complaint was filed. Plaintiff Garcia Mixcoa is a noncitizen who filed a FOIA request with CBP on August 30, 2023, to obtain records related to her lawful entry into the United States in 2017, which she needed in order to accurately complete her asylum application. Dkt. 42 ¶¶ 65-66. Ms. Garcia Mixcoa's FOIA request had been pending with CBP for more than 11 months at the time the amended Complaint was filed.

**III.    THE COURT SHOULD CERTIFY THE PROPOSED CLASS.**

Under Federal Rule of Civil Procedure 23, Plaintiffs are entitled to class certification where "two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). Plaintiffs' proposed class satisfies Rule 23(a) and (b)(2).

As an initial matter, the D.C. Circuit has long recognized that, in addition to claims seeking relief related to specific FOIA requests, a plaintiff may assert "a claim that an agency *policy or practice* will impair the party's lawful access to information in the future." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988); *see also Wash. Laws.' Comm. for Civ. Rts. & Urb. Affs. v. DHS*, 145 F.4th 63, 67 (D.C. Cir. 2025) (citing *Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 780 (D.C. Cir. 2018)). The challenged policy or practice need not be formal nor explicitly violate FOIA; even "informal agency conduct" that results in a "persistent failure to adhere to FOIA's requirements" is actionable. *Jud. Watch*, 895 F.3d at 777, 778; *cf. Newport Aeronautical Sales v. Dep't of the Air Force*, 684 F.3d 160, 164 (D.C. Cir. 2012) (acknowledging the viability of a policy-or-practice claim); *Ctr. for the Study of Servs. v. U.S. Dep't of Health and Hum. Servs.*, 874 F.3d 287, 292 (D.C. Cir. 2017) (same).

Notably, another district court already has certified a nationwide class challenging the policy and practice of Defendant DHS and U.S. Citizenship and Immigration Services (USCIS), another DHS component agency, of failing to produce individuals' Alien Registration Files (A-Files) under FOIA within the same statutory time period. *Nightingale v. U.S. Citizenship & Immigr. Servs.*, 333 F.R.D. 449, 457–63 (N.D. Cal. 2019); *accord Brown*, 132 F. Supp. 3d at

1172, 1174 (N.D. Cal. 2015) (denying motion to dismiss, finding that the plaintiffs had "describe[d] a longstanding and pervasive practice of unreasonable delay in CBP's response to FOIA requests" and that DHS's and CBP's failure to meet the statutory response deadline was "an actionable violation of FOIA.").

More generally, courts, including this Court, have routinely certified class actions challenging immigration policies and practices that have broad, categorical effect. *See, e.g.*, *Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, No. CV 25-306 (RDM), 2025 WL 1825431, at *45-49 (D.D.C. July 2, 2025) (certifying nationwide class of individuals subject to a presidential proclamation preventing them from applying for asylum and withholding of removal); *O.A. v. Trump*, 404 F. Supp. 3d 109, 154-60 (D.D.C. 2019) (certifying nationwide class of asylum seekers entering the United States through the southern border not at ports of entry); *Ramirez v. ICE*, 338 F. Supp. 3d 1, 43-50 (D.D.C. 2018) (certifying nationwide class of former unaccompanied children detained by U.S. Immigration & Customs Enforcement after turning 18 years of age); *Mansor v. U.S. Citizenship & Immigr. Servs.*, 345 F.R.D. 193, 208 (W.D. Wash. 2023) (certifying nationwide class of Temporary Protected Status (TPS) applicants challenging the government's denial of interim employment authorization); *Batalla Vidal v. Wolf*, 501 F. Supp. 3d 117, 138 (E.D.N.Y. 2020) (certifying nationwide classes of Deferred Action for Childhood Arrivals (DACA) recipients and applicants challenging policy suspending the DACA program).

These cases demonstrate the propriety of Rule 23(b)(2) certification in actions challenging agency policies depriving noncitizens of immigration benefits, including access to immigration records that only the agency possesses. Indeed, the rule was intended "to facilitate the bringing of class actions in the civil-rights area," particularly those seeking declaratory or

10

injunctive relief. 7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1775 (3d ed. 2023). Claims brought under Rule 23(b)(2) often involve issues affecting noncitizens who would be unable to present their claims absent class treatment. Additionally, the core issues in these types of cases generally present pure questions of law, rather than disparate questions of fact, and thus are well suited for resolution on a class-wide basis.

### A. The Proposed Class Meets All Requirements of Federal Rule of Civil Procedure 23(a).

#### 1. The proposed class members are so numerous that joinder is impracticable.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Joinder does not have to be impossible—instead, plaintiff must show 'only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate.'" *N.S. v. Hughes*, 335 F.R.D. 337, 352 (D.D.C. 2020) (quoting *D.L. v. District of Columbia*, 302 F.R.D. 1, 11 (D.D.C. 2013), aff'd, 860 F.3d 713 (D.C. Cir. 2017)). "Numerousness—the presence of many class members—provides an obvious situation in which joinder may be impracticable, but it is not the only such situation . . . ." William B. Rubenstein, 1 *Newberg & Rubenstein on Class Actions* § 3:11 (6th ed. 2023) (footnote omitted). "Thus, Rule 23(a)(1) is an impracticability-of-joinder rule, not a strict numerosity rule. It is based on considerations of due process, judicial economy, and the ability of claimants to institute suits." *Id.* (footnotes omitted). Determining numerosity "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980).

While "[t]here is no specific threshold that must be surpassed[,] . . . courts in this jurisdiction have observed that a class of at least forty members is sufficiently large to meet this

11

requirement." *Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2007). Courts have also found joinder impracticable with even fewer class members. *See, e.g.*, *Hum v. Dericks*, 162 F.R.D. 628, 634 (D. Haw. 1995) (noting that "[c]ourts have certified classes with as few as thirteen members"); *McCluskey v. Trustees of Red Dot Corp. Emp. Stock Ownership Plan & Trust*, 268 F.R.D. 670, 673–76 (W.D. Wash. 2010) (certifying class with 27 known members); *Ark. Educ. Ass'n v. Bd. of Educ.*, 446 F.2d 763, 765–66 (8th Cir. 1971) (finding less than 20 class members sufficient). Moreover, Plaintiffs may meet the numerosity requirement "by supplying estimates, rather than a precise number, of putative class members," *O.A.*, 404 F. Supp. 3d at 155, "so long as there is a reasonable basis for the estimate provided," *Kifafi v. Hilton Hotels Ret. Plan*, 189 F.R.D. 174, 176 (D.D.C. 1999).

Because an estimated 85% of all FOIA requests to CBP are requests for records pertaining to an individual, *see* Dkt. 42 ¶ 3, and CBP almost never makes determinations within 30 days, requests for an individual's records comprise a significant number of CBP's current backlog. At the close of FY 2024, the backlog totaled 110,271. *See* Exh. A, FY 2024 DHS FOIA Report at 31. Defendants know the exact number of putative class members who have not received a determination on their FOIA requests. *Accord Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999) ("[Immigration officials are] uniquely positioned to ascertain class membership.").

Nevertheless, Plaintiffs reasonably estimate that there are at least thousands of attorneys and individual class members—if not tens of thousands given CBP's existing backlog of 110,271 requests. Exh. A, FY 2024 DHS FOIA Report at 31. The declarations of immigration attorneys who practice in numerous cities across the country substantiate numerous—and well over forty, *Taylor*, 241 F.R.D. at 37— FOIA requests filed for individual records that have been pending

with CBP for more than 30 business days without a determination, both presently and at the time this Complaint was filed. *See* Exh. C-1, Second Araujo Decl. ¶ 4 (13 FOIA requests); Exh. C-2, Second Brown Decl. ¶ 4 (12 FOIA requests); Exh. C-4, Second Kane Decl. ¶ 5 (6 FOIA requests); Exh. C-5, Second Khanbabai Decl. ¶ 4 (1 FOIA request); Exh. C-7, Second Ryan Decl. ¶ 4 (4 FOIA requests); Exh. C-8, Second Sitterley Decl. ¶ 4 (1 FOIA request); Exh. C-10, Second Wood Decl. ¶ 4 (125 FOIA requests); Exh. C-12, Second Mashek Decl. ¶ 3 (14 FOIA requests in declarant's unit and 66 FOIA request in other units within the organization); Second Nielsen-Reagan Decl. ¶ 4 (1 FOIA Request); Exh. C-11, Munoz Decl. ¶ 5 (4 FOIA requests); *see also* Dkt. 9-1, Sanchez Mora Dec. ¶ 6 (37 FOIA requests); Dkt. 9-2, Waldron Dec. ¶ 4 (organization-wide estimate of 125 FOIA requests); Dkt. 9-3, García Dec. ¶ 4 (29 FOIA requests); Dkt. 9-6, Tolchin Dec. ¶ 4 (1 FOIA request); Dkt. 9-7, First Kane Dec. ¶ 8 (7 FOIA requests); Dkt. 9-8, First Araujo Dec. ¶ 4 (12 FOIA requests); Dkt. 9-9, First Vakili Dec. ¶ 5 (2 FOIA requests); Dkt. 9-11, First Cannon Dec. ¶ 5 (1 FOIA request); Dkt. 9-12, Castañeda Acosta Dec. ¶ 4 (organization-wide estimate of 4 FOIA requests); Dkt. 9-13, First Wood Dec. ¶ 4 (office-wide estimate of 50 FOIA requests); Dkt. 9-14, First Nair Dec. ¶ 4 (3 FOIA requests); Dkt. 9-15, Nielsen-Reagan Dec. ¶ 4 (2 FOIA requests); Dkt. 9-16, First Amann Dec. ¶ 4 (3 FOIA requests); Dkt. 9-17, First Brown Dec. ¶ 5 (10 FOIA requests); Dkt. 9-18, Kersh Dec. ¶ 4 (3 FOIA requests); Dkt. 9-19, First Khanbabai Dec. ¶ 5 (1 FOIA request); Dkt. 9-20, First Mashek Dec. ¶ 6 (37 FOIA requests in VAWA unit of organization, 23 in other units); Dkt. 9-21, First Ryan Dec. ¶ 5 (40 FOIA requests).[15]

---

[15]    But for the delays and poor quality of CBP responses, more FOIA requests would likely be filed with CBP. *See, e.g.*, Second Nielsen-Reagan Decl. ¶ 3; *see also id.* (attesting that it took CBP nine months to make an erroneous determination that no records existed where counsel had obtained some of the existing records through other means).

Additionally, at the time the complaint was filed, declarants described chronic delays after submitting FOIA requests with CBP for nearly all their clients, ranging from 6 to 15 months. *See* Dkt. 9-1, Sanchez Mora Dec. ¶ 7 (10 to 11 months); Dkt. 9-2, Waldron Dec. ¶ 5 (6 or more months); Dkt. 9-3, García Dec. ¶ 5 (over 12 months); Dkt. 9-6, Tolchin Dec. ¶ 4 (about 9 to 13 months); Dkt. 9-7, First Kane Dec. ¶ 14 (over 6 months); Dkt. 9-8, First Araujo Dec. ¶¶ 4, 7 (9 to 10 months in general and sometimes close to or over 1 year); Dkt. 9-9, First Vakili Dec. ¶ 5 (one pending longer than 6 months, another pending longer than 9 months); Dkt. 9-10, First Sitterley Dec. ¶ 7 (over 6 months); Dkt. 9-11, First Cannon Dec. ¶ 4 (more than 126 business days and some over one year); Dkt. 9-12, Castañeda Acosta Dec. ¶ 4(d) (two requests pending for over 9 months and two requests pending for over 7 months); Dkt. 9-13, First Wood Dec. ¶ 4 (over 6 months); Dkt. 9-14, First Nair Dec. ¶ 4 (one request pending more than 8 months and two others pending for 6-7 months); Dkt. 9-15, Nielsen-Reagan Dec. ¶ 6 (at least several months); Dkt. 9-16, Amann Dec. ¶ 4 (two requests pending for 8 months and one pending for 3 months); Dkt. 9-17, First Brown Dec. ¶ 6 (around 6 months and, in one case, up to 14 months); Dkt. 9-18, Kersh Dec. ¶ 5 (6 to 15 months); Dkt. 9-19, First Khanbabai Dec. ¶ 6 (at least 6 months); Dkt. 9-20, First Mashek Dec. ¶ 6 (6 to 10 months); Dkt. 9-21, First Ryan Dec. ¶ 9 (more than one year).

Attorneys presently report continued delays, now up to 21 months. *See* Exh. C-1, Second Araujo Decl. ¶ 3 (approximately 5 months); Exh. C-2, Second Brown Decl. ¶ 3 (between 10 and 18 months); Exh. C-3, Second Cannon Decl. ¶¶ 2, 4 (between 6 and 13 months); Exh. C-4, Second Kane Decl. ¶ 4 (between 11 and 21 months); Exh. C-5, Second Khanbabai Decl. ¶ 3 (between 3 and 14 months); Exh. C-7, Second Ryan Decl. ¶ 3 (between 6 and 14 months); Exh. C-8, Second Sitterley Decl. ¶ 3 (between 10 and 13 months); Exh. C-10, Second Wood Decl. ¶ 3 (at least 10 to 12 months); Exh. C-11, Munoz Decl. ¶ 6 (12 months); Exh. C-12, Second Mashek

Decl. ¶ 3 (between 4 to 10 months); Exh. C-13, Secon Nielsen-Reagan Decl. ¶ 4 (nearly 9

months).

Finally, "numerosity is about much more than just the total number of class members,"

including whether "it is difficult to ascertain how many class members there will be," in which

case "the question simply becomes whether the existence of unknown and unnamed future class

members would make joinder difficult." *N.S.*, 335 F.R.D. at 352. "This is especially true when

plaintiff seeks injunctive relief." *Id*.; *see also id*. at 353 (finding numerosity where "future class

members were unknown and unnamed"); *J.D. v. Azar*, 925 F.3d 1291, 1322 (D.C. Cir. 2019)

(explaining that "classes including future claimants generally meet the numerosity

requirement"); *Ali v. Ashcroft*, 213 F.R.D. 390, 408–09 (W.D. Wash. 2003) ("[W]here the class

includes unnamed, unknown future members, joinder of such unknown individuals is

impracticable and the numerosity requirement is therefore met, regardless of class size." (citation

modified)); *Hawker v. Consovoy*, 198 F.R.D. 619, 625 (D.N.J. 2001) ("The joinder of potential

future class members who share a common characteristic, but whose identity cannot be

determined yet is considered impracticable."). Even if numerosity were a close question here

(which it is not), class certification is warranted. *Stewart v. Assocs. Consumer Discount Co.*, 183

F.R.D. 189, 194 (E.D. Pa. 1998) ("[W]here the numerosity question is a close one, the trial court

should find that numerosity exists, since the court has the option to decertify the class later

pursuant to Rule 23(c)(1).") (citation omitted).

### 2.    The class presents common questions of law and fact.

Rule 23(a)(2) requires that "there [be] questions of law or fact common to the class." Fed.

R. Civ. P. 23(a)(2). "Commonality need not be complete . . . . If there is some aspect or feature

of the claims which is common to all, the requirement is met." *Barnes v. District of Columbia*,

242 F.R.D. 113, 121 (D.D.C. 2007) (citation modified); *see also*, *e.g.*, *Coleman ex rel. Bunn v. District of Columbia*, 306 F.R.D. 68, 84 (D.D.C. 2015) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("Depending upon the circumstances, this may involve many common issues that together provide a resolution, but 'even a single common question will do.'"). Commonality exists if class members' claims all "depend upon a common contention of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores*, 564 U.S. at 350. Therefore, the critical issue for class certification "is not the raising of common 'questions' . . . but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (citation omitted).

Plaintiffs satisfy the commonality requirement because they challenge a policy that applies equally to all class members. *See, e.g.*, *O.A.*, 404 F. Supp. 3d at 156 (quoting *D.L. v. District of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013) ("Commonality is satisfied where there is 'a uniform policy or practice that affects all class members . . . .'")); *Ramirez*, 338 F. Supp. 3d at 45 (finding commonality where plaintiffs alleged that all class members were subject to immigration officials' "failure to comply with" statutory requirements for treatment of unaccompanied minors); *Nightingale*, 333 F.R.D. at 459 (finding that plaintiffs and proposed class members shared the common contention that defendants engaged in a "pattern and practice of failing to make determinations in . . . FOIA cases within the statutorily mandated time frame"); *Mansor*, 345 F.R.D. at 204 (finding that plaintiffs and proposed class members shared the common contention that USCIS has a practice or policy of violating the TPS statute by failing to issue interim employment authorization).

Differences in the circumstances of each named plaintiff or class member do not

undermine this showing of commonality. *See, e.g.*, *Borum v. Brentwood Vill., LLC*, 324 F.R.D. 1, 15-16 (D.D.C. 2018) (finding that class members "need not be identically situated" and that Rule 23 does not require that "all members of the putative class will be affected by the [challenged] policy in the same way"); *Nio v. Dep't of Homeland Sec.*, 323 F.R.D. 28, 32 (D.D.C. 2017) (citation omitted) ("[F]actual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members."); *Damus v. Nielsen*, 313 F. Supp. 3d 317, 332 (D.D.C. 2018) (same).

Plaintiffs and proposed class members also share a common injury: the delayed receipt of determinations on their FOIA requests filed with CBP. *See, e.g.*, *Nightingale*, 333 F.R.D. at 459 ("[T]he shared injury between plaintiffs and proposed class members is the delayed receipt of determinations on their A-File FOIA requests . . . ."); *see also, e.g.*, *Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 449 (1989) (explaining that the Supreme Court has held that a FOIA requester who sought records and did not receive them has been injured); *Zivotofsky ex. rel. Ari Z. v. Sec'y of State*, 444 F.3d 614, 618 (D.C. Cir. 2006) (holding that a FOIA requestor suffers an injury where "he did not get what the statute entitled him to receive"). Accordingly, their injuries are capable of class-wide resolution through declaratory relief declaring Defendants' policy or practice unlawful under the FOIA and injunctive relief requiring the unlawful delay to cease. As the relief sought by Plaintiffs will resolve the litigation as to all class members "in one stroke," *Wal-Mart*, 564 U.S. at 350, the commonality requirement of Rule 23(a)(2) is satisfied.

A federal court has found the commonality requirement satisfied "regardless of whether a plaintiff's specific FOIA requests have been mooted because the agency has responded to their request," where—

> [p]laintiffs have shown, through multiple declarations of immigration attorneys across the nation, that (1) defendants' violation of FOIA is not merely an isolated incident, (2) plaintiffs and many other similarly situated people have been personally harmed by the alleged practice, and (3) proposed class members include those who will be subjected to defendants' delays in the future when they file A-File FOIA requests.

*Nightingale*, 333 F.R.D at 458–59; *cf. Wash. Laws.' Comm. for Civ. Rts. & Urb. Affs.*, 145 F.4th at 67 (quoting *Payne Enters.*, 837 F.2d at 490–91) (explaining that "the production of documents in response to individual requests 'will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future'"). Plaintiffs have made the same showing here. First, numerous declarations from immigration attorneys demonstrate that CBP has engaged and continues to engage in a pattern and practice of failing to make determinations on FOIA requests within the time period mandated by statute. *See generally* Dkt. 9-1; Dkt. 9-2; Dkt. 9-3; Dkt. 9-5; Exh. B, Garcia Mixcoa Decl.; Dkts. 9-6 – 9-21; Exh. C-1 – C-13. Defendant DHS's own statistics—documenting constant backlogs of FOIA requests in recent years—demonstrate that Defendant CBP engages in such a pattern and practice. Dkt. 42 ¶¶ 26-41; *see also supra* Section II.B. DHS defines FOIA backlog as "[t]he number of requests or administrative appeals that are pending at an agency at the end of the fiscal year that are beyond the statutory time for a response." *See* Exh. A, FY 2024 DHS FOIA Report at 6. Given this definition, CBP's backlogs from the last seven fiscal years demonstrate that the agency's failure to meet the statutory time period is not an isolated incident. Second, Plaintiffs submit numerous declarations demonstrating that they and other similarly situated individuals have been harmed by CBP's practice. Dkt. 42 ¶¶ 42-51; *see also supra,* Section II.A. Third, the proposed class is defined as including those who will be subjected to delays in the future when they file FOIA requests for an individual's CBP records. Dkt. 42 ¶ 68.

### 3.    Plaintiffs' claims are typical of the claims of the members of the proposed class.

Rule 23(a)(3) specifies that the claims of the representatives must be "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). Meeting this requirement usually follows from the presence of common questions of law. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge."). To establish typicality, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 156 (citation modified); *see also J.D.*, 925 F.3d at 1322 (quoting 7A Charles Alan Wright et al., *Federal Practice and Procedure* § 1764 (3d ed. 2019)) ("[T]ypicality is ordinarily met 'if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory.'"). As with commonality, factual differences among class members do not defeat typicality provided there are legal questions common to all class members. *See Wagner v. Taylor*, 836 F.2d 578, 591 (D.C. Cir. 1987) (noting that "[c]ourts have held that typicality is not destroyed merely by 'factual variations'"); *Bynum v. D.C.*, 214 F.R.D. 27, 35 (D.D.C. 2003) ("[F]actual variations between the claims of class representatives and the claims of other class members . . . do not negate typicality.").

In this case, the named Plaintiffs' claims are typical of the claims of putative class members. Plaintiffs filed FOIA requests with CBP that remained pending for over 30 business days, squarely fitting within the class definition. Specifically, Plaintiffs, like proposed class members, did not timely receive CBP's determination on their FOIA requests, even though the FOIA statute expressly requires a determination in no longer than 30 business days of the request being filed. In sum, the harms suffered by Plaintiffs are typical of the harms suffered by those of

proposed class members, and Plaintiffs' injuries and the injuries of proposed class members result from the identical course of conduct by Defendants. *See, e.g.*, *Nightingale*, 333 F.R.D. at 460 (finding typicality where "plaintiffs and proposed class members are harmed by or will be harmed by defendants' same course of conduct, namely the lack of determination on their . . . FOIA requests within the statutory timeline"). Plaintiffs therefore satisfy the typicality requirement.

### 4. Plaintiffs will adequately protect the interests of the proposed class, and counsel are qualified to litigate this action.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy of representation imposes two criteria on plaintiffs seeking to represent a class: '(1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel.'" *Ramirez*, 338 F. Supp. 2d at 47 (quoting *Twelve John Does v. Dist. of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997)).

### a. Named Plaintiffs

Plaintiffs each seek relief on behalf of the class as a whole and have no interest antagonistic to other members of the class; they will thus fairly and adequately protect the interests of the class they seek to represent. *See Nightingale*, 333 F.R.D. at 462 (finding no conflict of interest where "[b]oth plaintiffs and proposed class members have a shared interest in ensuring that defendants make determinations in response to their . . . FOIA requests within the statutory time period"); *see also Coleman*, 306 F.R.D. at 84 (finding that, where plaintiffs "seek identical relief for all class members, . . . there are no conflicting interests that might derail certification on this prong"). Their mutual goal is to challenge Defendants' unlawful practices

and to obtain declaratory and injunctive relief that would not only cure this illegality but remedy the injury suffered by all current and future class members. Dkt. 9-1 ¶ 11; Dkt. 9-2 ¶ 11; Dkt. 9-3 ¶ 11; Dkt. 9-5 ¶ 8; Exh. B, Garcia Mixcoa Decl. ¶ 8. They thus seek a remedy for the same injuries, and all share an interest in ensuring that Defendants make determinations in response to their CBP FOIA requests within the statutory time period. Furthermore, Plaintiffs do not seek monetary damages for themselves, and there is no potential financial conflict of interest. Because the interests of the representatives and of the class members are aligned, Plaintiffs are adequate representatives of the proposed class.

### b.    Counsel

The adequacy of counsel is also satisfied here. Counsel are deemed qualified when they have experience in previous class actions and cases involving the same area of law. Fed. R. Civ. P. 23(g)(1)(A); *see, e.g.*, *Ramirez*, 338 F. Supp. 3d at 47 (finding class counsel adequate where they "have supplied declarations attesting to their willingness and abilities to take an active role in this litigation and to protect the interests of absent plaintiffs"); *O.A.*, 404 F. Supp. 3d at 157 (same). Plaintiffs are represented by attorneys from the National Immigration Litigation Alliance, Northwest Immigrant Rights Project, and Van Der Hout LLP, all of whom have extensive experience in class action lawsuits and other complex federal court litigation involving immigration law. *See generally* Dkt. 9-22; Dkt. 9-23; Dkt. 9-24; Dkt. 9-25. Counsel are able to demonstrate that they are counsel of record in numerous cases focusing on immigration law, in which they vigorously represented both the class representatives and absent class members in obtaining relief.

### B.    The Proposed Class Satisfies Federal Rule of Civil Procedure 23(b)(2).

In addition to satisfying the four requirements of Rule 23(a), Plaintiffs also must meet

one of the requirements of Rule 23(b) for a class action to be certified. Here, Plaintiffs seek

certification under Rule 23(b)(2), which requires that "the party opposing the class has acted or

refused to act on grounds that apply generally to the class, so that final injunctive relief or

corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P.

23(b)(2). Rule 23(b)(2) thus "impos[es] two requirements: (1) that defendant's actions or refusal

to act are 'generally applicable to the class' and (2) that plaintiffs seek final injunctive relief or

corresponding declaratory relief on behalf of the class." *Bynum*, 214 F.R.D. at 37. "The key to

the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the

notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the

class members or as to none of them." *J.D.*, 925 F.3d at 1314–15 (quoting *Wal-Mart*, 564 U.S. at

360). Thus, this Court certifies classes under this provision where "[p]laintiffs challenge

[d]efendants' practice of failing to comply with [a] statutory provision at all," even where the

relevant statute may also require "individualized determinations." *Ramirez*, 338 F. Supp. 3d at

48; *see also O.A.*, 404 F. Supp. 3d at 157 (finding Rule 23(b)(2) satisfied where class members

claims would be resolved through a declaration that defendants' policy was unlawful and setting

it aside); *Damus*, 313 F. Supp. 3d at 334 (certifying a class where "Plaintiffs ask only that the

Court address an alleged systematic harm" and do not seek "to remedy discrete errors" in

individual cases).

This action meets the requirements of Rule 23(b)(2). CBP and DHS have subjected or

will subject all class members to the same policy of failing to make timely determinations on

FOIA requests for an individual's records. Defendants take the position that they are not required

to submit responses to proposed class members' FOIA requests within the statutory timeline.

Dkt. 42 ¶¶ 1, 10, 37, 39-40. Plaintiffs and proposed class members seek declaratory and

injunctive relief declaring Defendants' policy unlawful, requiring Defendants to eliminate the existing backlog, and ordering Defendants to process future FOIA requests for individual records filed with CBP within 30 business days. Therefore, "Plaintiffs have sufficiently satisfied the requirement for a 23(b)(2) class in the FOIA context, such that 'a single injunction for declaratory judgment would provide relief to each member of the class.'" *Nightingale*, 333 F.R.D. at 463 (quoting *Wal-Mart*, 564 U.S. at 360).

## IV.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court certify the proposed class, appoint Plaintiffs as class representatives, and appoint the undersigned attorneys as class counsel.

Respectfully submitted,

s/*Trina Realmuto*
Trina Realmuto*
trina@immigrationlitigation.org

s/*Mary Kenney*
Mary Kenney (DC SBN 1044695)
mary@immigrationlitigation.org

s/*Kristin Macleod-Ball*
Kristin Macleod-Ball*
kristin@immigrationlitigation.org

NATIONAL IMMIGRATION
  LITIGATION ALLIANCE
10 Griggs Terrace
Brookline, MA, 02446
(617) 819-4447

* *Admitted pro hac vice*

s/*Matt Adams*
Matt Adams*
matt@nwirp.org

s/*Leila Kang*
Leila Kang*
leila@nwirp.org

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

s/*Marc Van Der Hout*
Marc Van Der Hout*

s/*Johnny Sinodis*
Johnny Sinodis*

VAN DER HOUT LLP
360 Post St., Suite 800
San Francisco, CA 94108
(415) 981-3000
ndca@vblaw.com

*Attorneys for Plaintiffs*

Dated: September 12, 2025

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 12, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of for the District of Columbia by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

s/ *Trina Realmuto*
Trina Realmuto
National Immigration Litigation Alliance