**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JULIAN SANCHEZ MORA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CUSTOMS AND BORDER PROTECTION; DEPARTMENT OF HOMELAND SECURITY,<br><br>Defendants. | Civil Action No. 24-3136 (BAH)<br><br>Judge Beryl A. Howell |

## MEMORANDUM OPINION

Plaintiffs, three immigration attorneys and three individuals, who sought their clients' or their own international travel and immigration records from CBP, allege that defendants, the Department of Homeland Security ("DHS") and its component, Customs and Border Protection ("CBP"), maintain a policy or practice of taking longer than statutorily permitted to process requests for documents directed at CBP, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Pls.' Renewed Mot. for Class Cert. ("Pls.' Class Cert. Mot."), ECF No. 88; Pls.' Mem. in Support of Renewed Mot. for Class Cert. ("Pls.' Class Cert. Mem."), ECF No. 88-1.[1] Three motions are pending before the Court. To vindicate their statutory rights under FOIA, plaintiffs have moved to certify a class of "persons who filed, or will file, FOIA requests with CBP for an individual's records which have been pending, or will be pending, with CBP for more than 30 business days without a determination." Pls.' Class Cert. Mem. at 2. Meanwhile, defendants

---

[1] The three individual plaintiffs are Ali Ainab, Rafael Edgardo Flores Rodriguez, and Beatriz Ariadna Garcia Mixcoa, each of whom filed a FOIA request seeking their own travel or immigration records from CBP. *See* Decl. of Ali Ainab ("Ainab Decl.") ¶ 5, ECF No. 9-5; Decl. of Rafael Edgardo Flores Rodriguez ("Rodriguez Decl.") ¶ 4, ECF No. 89; Decl. of Beatriz Garcia Mixcoa ("Mixcoa Decl.") ¶ 4, ECF No. 88-4. The three attorney plaintiffs are Julian Sanchez Mora, Siobhan Marie Waldron, and Carlos Moctezuma Garcia, each of whom practice immigration law and regularly submit FOIA requests for clients' travel and immigration records to CBP. Decl. of Julian Sanchez Mora ("Sanchez Mora Decl.") ¶¶ 2, 5, ECF No. 9-1; Decl. of Siobhan Marie Waldron ("Waldron Decl.") ¶¶ 1, 3, ECF No. 9-2; Decl. of Carlos Moctezuma Garcia ("Garcia Decl.") ¶¶ 1, 3, ECF No. 9-3.

1

seek summary judgment and, if that is unsuccessful, oppose any class certification, *see* Defs.' Mot. for Summ. J. & Opp'n to Pls.' Mot. for Class Cert. ("Defs.' MSJ"), ECF No. 93, which dispositive motion plaintiffs oppose while, in the alternative, moving for additional discovery prior to any grant of summary judgment, Pls.' Opp'n to Defs.' MSJ ("Pls.' MSJ Opp'n"), ECF No. 101; Pls.' Mot. for Disc. Pursuant to Fed. R. Civ. P. 56(d) ("Pls.' Disc. Mot."), ECF No. 102.

For the reasons described below, defendants' motion for summary judgment is **GRANTED**, and plaintiffs' motions for class certification and discovery are **DENIED**.

## I.   BACKGROUND

The factual background and procedural history of this case are summarized below.

### A.  Factual Background

Plaintiffs are "attorneys and individuals who seek records that pertain to their clients and themselves, respectively, including records related to an individual's entry into and/or exit from the United States, admission, criminal history, and records of inspection, apprehension, or interaction with CBP employees." Pls.' Class Cert. Mem. at 1. "The only way to obtain a copy of an individual's CBP records is to submit a FOIA request." *Id.* at 4. Each of the putative class representatives had FOIA requests pending before CBP for more than 30 business days at the time this action was filed. *Id.* at 7-8. The factual allegations describing plaintiffs' situations are addressed first, followed by the plaintiffs' description of the challenged policy and practice.

### 1.  *Individual Plaintiffs*

The three individual plaintiffs are each involved in immigration proceedings and had pending, overdue FOIA requests at the time this action was filed. Ali Ainab, a U.S. citizen, has two children who "currently reside in Somalia." Decl. of Ali Ainab ("Ainab Decl.") ¶ 2, ECF No. 9-5. His "understanding is that . . . [his] children are also U.S. citizens," which he sought to

"prove" by filing an application with the U.S. Embassy in Turkey, where these two children were born. *Id.* ¶ 3. "As part of that process, [he] must show that [he] ha[s] lived for five years in the United States," and was told by the embassy that "the only documents they would accept to prove that [he] ha[d] spent enough time living in the United States are [his] entry and exit records from the U.S. government." *Id.* ¶¶ 3-4. He submitted a FOIA request to CBP, via his attorney, on December 22, 2023. *Id.* ¶ 5. At the time this action was filed, CBP had yet to make a determination on his FOIA request, and, in the meantime, his children could not "travel to the United States, and [they could] []not live as a family." *Id.* ¶ 6. In November 2024, CBP released the records sought to Mr. Ainab. *See* Defs.' MSJ, Decl. of Patrick Howard, Branch Chief, CBP FOIA Division ("Howard Decl.") ¶ 23, ECF No. 93-2.

Rafael Edgardo Flores Rodriguez, a citizen of Honduras, "entered the United States in August 2003 on a B2 tourist visa." Decl. of Rafael Edgardo Flores Rodriguez ("Rodriguez Decl.") ¶ 2, ECF No. 89. To seek an adjustment of status and obtain a green card, he needed to prove that he entered the United States legally. *Id.* ¶ 3. He filed a FOIA request with CBP on June 23, 2023, and that request was pending when he joined this action in August 2024. *Id.* ¶ 4. After an initial determination and administrative appeal, CBP released his records on December 10, 2024, approximately four months after he joined this lawsuit. *Id.*

Finally, on August 23, 2023, Beatriz Garcia Mixcoa "submitted a request for records from [her] file" with CBP, pursuant to FOIA, in order to obtain her "immigration history for the asylum application [she] intended to file." Decl. of Beatriz Garcia Mixcoa ("Mixcoa Decl.") ¶ 3-4, ECF No. 88-4. When this action was filed, in April 2024, she "had not received a response to [her] FOIA request, which by then had been pending for 7 months." *Id.* ¶ 5. Eventually, after an initial determination and administrative appeal, her case was "administratively closed" on November 21,

2024, without release of records. *Id.* ¶ 6. "Due to the delays in obtaining [her] file from CBP, [she] did not file [her] asylum application until January 21, 2025," which "delayed [her] ability to obtain an employment authorization document." *Id.*

None of the three individual plaintiffs state that they intend to pursue any additional FOIA requests from CBP any time in the future.

### 2. *Attorney Plaintiffs*

The three attorney plaintiffs, Julian Sanchez Mora, Siobhan Marie Waldron, and Carlos Moctezuma Garcia, also seek to represent the class. First, Julian Sanchez Mora is an attorney who practices immigration law and criminal defense in California. Decl. of Julian Sanchez Mora ("Sanchez Mora Decl.") ¶ 2, ECF No. 9-1. In his criminal defense practice, he "must advise noncitizen criminal defendants about the risk of deportation based on a conviction when they are deciding whether to plead guilty," and accordingly "submits FOIA requests to various federal agencies," including CBP, to obtain information about clients' immigration status and history. *Id.* ¶ 3. In his immigration practice, he files FOIA requests "to assess clients' eligibility for immigration relief or benefits." *Id.* ¶ 5. At the time this action was filed, he had "at least 37 FOIA requests pending before CBP," all of which had been "pending for more than 30 business days." *Id.* ¶ 6. He reports that he typically receives a determination in "10 to 11 months." *Id.* ¶ 7. He had two requests pending for which he sought expedited processing because they were related to "pending removal proceedings" for clients, which requests he submitted in August 2023 and had not received a response at the time he filed this action approximately seven months after submission. *Id.* ¶ 8.

Siobhan Marie Waldron is an immigration attorney in California. Decl. of Siobhan Marie Waldron ("Waldron Decl.") ¶¶ 1-2, ECF No. 9-2. She "regularly file[s] [FOIA] requests on behalf

of [her] clients with [CBP]." *Id.* ¶ 3. She "ha[d] ten FOIA request pending before CBP that were filed on behalf of clients more than 30 business days ago," as of the filing of this action. *Id.* ¶ 4. She requested expedited processing for FOIA requests related to two detained clients on August 2, 2023, and November 29, 2023, both of which were still pending at the time the action was filed. *Id.* ¶ 6. She files these requests "primarily to assess an individual's eligibility for immigration benefits and relief from removal." *Id.* ¶ 7.

Carlos Moctezuma Garcia is an immigration and criminal defense attorney in Texas. Decl. of Carlos Moctezuma Garcia ("Garcia Decl.") ¶¶ 1-2, ECF No. 9-3. He reports that, "in general, it takes over 12 months for CBP to respond to FOIA requests." *Id.* ¶ 5. Similarly to the other attorney plaintiffs, obtaining individual records from CBP "is necessary to determine if the [client] is eligible to file an application for immigration benefits and/or whether they qualify for any required waivers," among other things. *Id.* ¶ 7. CBP's "delays sometimes prevent [him] and [his] colleagues from applying for a client's lawful permanent residency until many months, and sometimes years, later than [they] would have if [they] had promptly received the client's CBP records." *Id.* ¶ 8. Additionally, "asylum applicants must file for asylum within one year after arriving in the United States," and "[w]ithout timely access to CBP records through the FOIA process, it may be difficult to gather the necessary evidence to determine the filing deadline." *Id.*

Plaintiffs additionally submit declarations from thirteen additional attorneys who similarly describe submitting multiple FOIA requests and experiencing wait times longer than 20 to 30 business days prior to receiving a response from CBP. *See* Decls. in Support of Pls.' [First] Mot. to Certify Class, ECF No. 9, Exs. B1 to B16, ECF Nos. 9-6 to 9-21. Like the named attorney plaintiffs, they attest that the delays inhibit them from taking certain actions on behalf of their clients, since FOIA requests to CBP are the only way to obtain the records sought. *See, e.g.*, Decl.

of Stacy Tolchin ¶¶ 3-6, ECF No. 9-6; Decl. of Bardis Vakili ¶¶ 4-6, ECF No. 9-9; Decl. of Lizz Cannon ¶¶ 3-4, ECF No. 9-11.

### 3. CBP's Alleged Policy and Practice

Plaintiffs allege, as shown by the affidavits submitted by the named plaintiffs and others, that defendants have a policy or practice of waiting until after the statutory deadlines imposed by FOIA to make determinations on FOIA requests for "individual records," which they define to mean "records related to an individual, including the individual's entry into and/or exit from the United States; admission, withdrawal of admission, or denial of admission to the United States; criminal history; apprehension, inspection by, or interactions with, CBP employees; and removal, deportation, exclusion, voluntary return, and/or expulsion under any provision of the Immigration and Nationality Act or 42 U.S.C. § 265." Pls.' Class Cert. Mem. at 2.

For their part, defendants do not deny that CBP regularly exceeds FOIA's statutory deadlines, Defs.' MSJ at 5-6, but point primarily to an increasing number of FOIA requests in recent years as the reason for the delays, supported by two declarations from DHS and CPB. *See* Howard Decl.; Defs.' MSJ, Decl. of Catrina Pavlik-Keenan, DHS Deputy Chief FOIA Officer ("Pavlik-Keenan Decl."), ECF No. 93-3. CBP has 123,018 open FOIA cases, 107,521 of which are "in backlog status," meaning that more than 20 business days have passed. Howard Decl. ¶ 34. According to public, annual FOIA reports published by DHS, CBP's backlog has increased from 1,008 in 2017 to 110,271 in 2024, Pls.' MSJ Opp'n at 16 (citing DHS, *2017 Freedom of Information Act Report to the Att'y Gen.* ("*DHS 2017 Report*") 16 (2018); DHS, *2024 Freedom of Information Act Report to the Att'y Gen.* ("*DHS 2024 Report*") 31 (2025)), reduced somewhat to 107,521 in 2025, Howard Decl. ¶ 34.

Defendants explain that "CBP faces an enormous and ever-increasing burden on its FOIA program." *Id.* ¶ 31. "[P]ublic awareness and use of the FOIA have increased" in recent years, *id.*, a claim supported with citation to the number of FOIA requests received, which increased dramatically from fiscal year ("FY") 2016, in which CBP received 66,690 FOIA requests, to FY 2025, in which CBP received 207,396, *id.* ¶ 33, as well as the fact that "CBP's use of various communication technologies and the rise of digital records has expanded the universe of potentially responsive records that need to be searched," *id.* ¶ 32. Despite this substantial increase in the number of requests received, "CBP FOIA Division staff has not increased to account for the increased workload." *Id.* ¶ 35.

The government describes additional factors to increased numbers of FOIA requests and insufficient staffing, as causes of the increased workload. First, "CBP is required to consult" with other agencies or components who have an interest in documents potentially releasable, which can delay production, *id.* ¶ 15, and, at the same time, CBP must participate in consultations from other agencies, which diverts resources from requests directed to CBP, *id.* ¶ 18. Second, CBP cites significant variance in the "specificity and clarity" of requests, the cooperativeness of the requestors, and "the law enforcement sensitivities present in the records that necessitate additional safeguarding." *Id.* ¶ 17. Third, of the 107,521 cases in backlog status, CBP indicates that this agency has 154 open FOIA litigation cases against it "requir[ing] the FOIA Division to divert resources to process such requests." *Id.* ¶ 29.

Short of hiring more staff, CBP points to various steps the agency has taken in an effort to reduce the backlog and processing times. For example, in April 2024, CBP "reviewed its onboarding process for personnel processing FOIA requests" and provided a training to employees at field offices who help pull local records responsive to FOIA requests. *Id.* ¶ 45. CBP has also

entered, at some unspecified date, into an agreement with United States Customs and Immigration Services ("USCIS") wherein certain records requests directed to USCIS that would normally require a consultation with CBP can be handled directly by USCIS. *Id.* ¶ 46. CBP has also sought additional staff time by "periodically approv[ing] overtime hours" and "utiliz[ing] temporary duty . . . and light duty assignments" to process FOIA requests. *Id.* ¶¶ 47-48. CBP has also created two separate tracks for simple individual records requests and more complex requests from, for example, media. *Id.* ¶ 40. In addition, in January 2025, CBP made certain technological changes, including adding "new information fields" to its FOIA request portal to encourage clear requests, *id.* ¶ 49, and creating seven "bots" that "assist with completing various tasks and reduce the manual transactions" needed to complete FOIA requests, though a human worker "is still required to complete a manual responsive review of the records compiled by the bot assistant," *id.* ¶ 50. Finally, CBP has made some individual records available through an online portal without the need for a FOIA request. *Id.* ¶ 51.

Defendants also attest to DHS's role in CBP's FOIA processing, including that DHS promulgates FOIA regulations that apply to all the department's components, including CBP, Pavlik-Keenan Decl. ¶ 10, and provides CBP with the software it uses to process FOIA requests, *id.* ¶ 11. DHS has also lent staff time to certain aspects of CBP's FOIA processing to reduce the backlog and expedite requests. *Id.* ¶ 5.

Plaintiffs dispute nearly all of defendants' representations as to the steps taken to address backlogs in CBP's FOIA request processing, arguing that "[p]laintiffs need discovery to ascertain the veracity of the statements . . . because the information is solely in Defendants' possession." *See, e.g.*, Pls.' Statement of Material Facts ("Pls.' SMF") ¶ 4, ECF No. 101-1. As support, plaintiffs identify factual disputes as to whether defendants have "allocated sufficient staffing and budgetary

resources to CBP's FOIA division," Pls.' Statement of Genuine Issues ("Pls.' SGI") ¶ 1, ECF No. 101-1 at 10, and whether "an annual increase in FOIA requests—as opposed to inadequate funding, mismanagement, inadequate training, insufficient stop-gap measures, or a policy of treating FOIA's response timeframes as not mandatory, among other things—is the primary cause of the ever-increasing backlog," *id.* ¶ 2. Specifically, plaintiffs point to the fact that in FY 2024, the "backlog jumped by over 400%" compared to the prior year whereas FOIA filings "rose by only 23.56%." *Id.* ¶ 2(a). Nevertheless, aside from stating that they have insufficient information to respond, plaintiffs do not otherwise substantially dispute any of defendants' proposed undisputed facts.

### B. Procedural History

Plaintiffs filed this case on April 24, 2024, in the Northern District of California, *see* Compl., ECF No. 1, along with an initial class certification motion, *see* Pls.' First Mot. to Certify Class, ECF No. 8. The original complaint asserted a single claim that defendants maintained a "pattern or practice of violating the FOIA statute by failing to make timely determinations." Compl. ¶¶ 8, 68-70. In response, defendants moved to transfer the case to this Court, on grounds that FOIA claims may only be litigated in the district of the requestor's residency or the District of Columbia, and only some plaintiffs lived in the Northern District of California, or, in the alternative, moved to dismiss DHS as a defendant since the allegedly delayed FOIA requests were directed to CBP. Defs.' First Mot. to Transfer or Dismiss, ECF No. 40. Plaintiffs subsequently amended their complaint to add two claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1)-(2). *See* Am. Compl. ¶¶ 77-100, ECF No. 42. In response to the Amended Complaint, defendants renewed their dismissal motion as to DHS, and further moved to dismiss

the APA claims, and, again, to transfer the FOIA claim to this Court. Defs.' Second Mot. to Dismiss and Transfer to the District of Columbia, ECF No. 46.

In November 2024, the District Court for the Northern District of California granted defendants' second motion, dismissing plaintiffs' APA claims for lack of subject matter jurisdiction, dismissing DHS as a defendant, and transferring the remaining FOIA claim against CBP to this Court. *See* Order Granting Mot. to Dismiss in Part & Transferring Case, ECF No. 59. At this Court's direction to provide information on the status of the case, *see* Minute Order (Nov. 7, 2024), plaintiffs indicated they intended to move for reconsideration of dismissal of DHS as a defendant to their remaining FOIA claim. Jt. Meet & Confer Report (Jan. 10, 2025), ECF No. 76. Following briefing, upon reconsideration, DHS was reinstated as a defendant. *Sanchez Mora v. CBP*, No. 24-cv-3136 (BAH), 2025 WL 1713252, at *7 (D.D.C. June 18, 2025), ECF No. 85.

Plaintiffs subsequently filed a renewed motion for class certification. *See* Pls.' Class Cert. Mot.; *see also* Defs.' MSJ (incorporating opposition to class certification); Pls.' Reply in Support of Mot. for Class Cert. ("Pls.' Class Cert. Reply"), ECF No. 97. Defendants opposed that motion and moved for summary judgment. *See* Defs.' MSJ; *see also* Pls.' MSJ Opp'n; Defs.' Combined Reply in Support of MSJ & Opp'n to Pls.' Mot. for Disc. ("Defs.' Disc. Opp'n"), ECF No. 107. Plaintiffs, in addition to opposing defendants' motion for summary judgment, moved for discovery "to test the veracity of facts Defendants rely on in their motion for summary judgment and to support Plaintiffs' policy or practice claims," pursuant to Federal Rule of Civil Procedure 56(d). *See* Pls.' Disc. Mot.; *see also* Defs.' Disc. Opp'n; Pls.' Reply in Support of Mot. for Disc. ("Pls.' Disc. Reply"), ECF No. 109. These three pending motions are now ripe for resolution.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[a] party is entitled to summary judgment only if there is no genuine issue of material fact and judgment in the movant's favor is proper as a matter of law." *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (citation omitted); *see also* Fed. R. Civ. P. 56(a).  Generally, summary judgment may be granted to the moving party upon establishing facts entitling it to judgment on a claim, if the nonmoving party fails to rebut that evidence.  *Winston & Strawn, LLP v. McLean*, 843 F. 3d 503, 507 (D.C. Cir. 2016).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact," where "material" facts are those "that might affect the outcome of the suit under governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  In considering whether a dispute is "genuine," "the judge must view the evidence presented through the prism of the substantive evidentiary burden" that would ultimately decide the case.  *Id.* at 254.

In FOIA cases, summary judgment may be granted in favor of the government based on agency affidavits "[i]f they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith."  *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020); *see also Schaerr v. DOJ*, 69 F.4th 924, 929 (D.C. Cir. 2023).  Agency declarations are afforded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'"  *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)); *see also Watkins L. & Advocacy, PLLC v. DOJ*, 78 F.4th 436, 450 (D.C. Cir. 2023).  The D.C. Circuit has noted that "[t]he vast majority of FOIA cases can be resolved on

11

summary judgment." *Citizens for Resp. & Ethics in Wash. v. DOJ*, 58 F.4th 1255, 1272 (D.C. Cir. 2023) (Sentelle, J., concurring) (alteration in original) (quoting *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020) (quoting *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011))).

## III.    DISCUSSION

Plaintiffs allege, in support of their FOIA claim, that "CBP has a nationwide pattern or practice of failing to make records related to an individual 'promptly available' upon request," Am. Compl. ¶ 103, and a corresponding "policy that 5 U.S.C. § 552(a)(6)(A)(i) and (B)(i) do not impose an affirmative obligation or require CBP to make determinations within the specified statutory time frames in 5 U.S.C. § 552(a)(6)(A)(i) and (B)(i)," *id.* ¶ 105. As a result, DHS has failed in its obligations to "ensure Defendant CBP complies with its obligations under the FOIA." *Id.* ¶ 108. As relief, plaintiffs seek declaratory judgment that defendants' "failure to make determinations on Plaintiffs' and proposed class members' FOIA requests filed with Defendant CBP for individual records within the statutory time frame and to make records promptly available violates the FOIA," and "a permanent injunction requiring Defendants to make determinations on FOIA requests for individual records that have already been pending for more than 30 business days with CBP within 60 business days of the Court's order or as the Court deems appropriate," and on any new requests within 30 days. *Id.* at 26-27 (Prayer for Relief).

Defendants advance multiple arguments why summary judgment in their favor is appropriate. First, they argue that "a failure to meet FOIA's statutory deadlines cannot by itself constitute an illegal policy or practice," and, in particular, "is not sufficient to support equitable relief" in the form of the injunction sought by plaintiffs. Defs.' MSJ at 11 (capitalization modified). Second, defendants argue that "the record does not establish that Defendants maintain any sort of

unlawful policy or practice as to how they handle FOIA requests." *Id.* at 12.  Third, defendants

contend that, even if such a policy or practice existed, plaintiffs could not show that "ordinary

remedies, such as a production order, would be inadequate to overcome an agency policy or

practice." *Id.* at 15-16 (quoting *Jud. Watch, Inc. v. Dep't of Homeland Sec.,* 895 F.3d 770, 783

(D.C. Cir. 2018)).  Finally, if all else fails, defendants argue that the Court should exercise its

equitable discretion to deny the relief sought by plaintiffs. *Id.* at 17.[2]

Before turning to the parties' arguments regarding the merits of defendants' summary

judgment motion, the timing requirements under FOIA are briefly reviewed.

### A. FOIA's Timing Requirements

FOIA generally requires government agencies to "make . . . records promptly available to

any person" when that person submits a "request for records which (i) reasonably describes such

records and (ii) is made in accordance with published rules stating the time, place, fees (if any),

and procedures to be followed," 5 U.S.C. § 552(a)(3)(A), subject to certain exemptions, *id.*

§ 552(b).  Specific time limits are set out for an agency's response to FOIA requests, requiring that

---

[2]      Given that the three individual plaintiffs have already received responses to their FOIA requests and do not express any intent to submit future FOIA requests to CBP, an obvious mootness issue comes to the fore, though defendants have not raised this issue and would normally bear the burden of establishing mootness, which "is . . . heavy." *Porup v. CIA*, 997 F.3d 1224, 1231-1232 (D.C. Cir. 2021) (omission in original) (quoting *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953))).  Nonetheless, since mootness "implicates [the Court's] jurisdiction," courts may address mootness *sua sponte.  St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 537 (1978); *see also United States v. Juvenile Male*, 564 U.S. 932, 933-34 (2011) (per curiam).  Plaintiffs' claim hinges on an alleged policy or practice, not denial of any single FOIA request, and the D.C. Circuit has described policy-or-practice claims as an "exception to mootness." *Jud. Watch*, 895 F.3d at 777.  Yet, typically, such cases have featured repeat requestors, who are likely therefore to be affected repeatedly in the future by any unlawful FOIA policy or practice. *See, e.g.*, *Jud. Watch*, 895 F.3d at 777 (requestor sought similar records repeatedly and intended to submit similar requests in the future); *Wash. Lawyers' Comm. for C.R. & Urb. Affs. v. DOJ*, 145 F.4th 63, 65 (D.C. Cir. 2025) (requestor "frequently" requested prison records of clients); *Citizens for Resp. & Ethics in Wash. v. CDC*, No. 25-cv-1020 (TJK), 2026 WL 890427, at *1 (D.D.C. Mar. 31, 2026) (requestor "routinely" filed FOIA requests with CDC); *cf. Walsh v. U.S. Dep't of Veterans Affs.*, 400 F.3d 535 (7th Cir. 2005) (holding that a plaintiff's policy-or-practice claim was moot when he had shown only a "faint possibility" that he would "ever request additional records").  In contrast here, however, the record is silent as to whether the individual plaintiffs intend to submit future FOIA requests.  Nevertheless, since defendants did not raise mootness, plaintiffs have had no opportunity to address this issue, and since the attorney plaintiffs would qualify as repeat requesters to defeat a mootness challenge as to them to satisfy this jurisdictional threshold, the issue of mootness is not further addressed.

agencies "shall . . . determine within 20 [business] days . . . after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of . . . such determination and the reasons therefor." *Id.* § 552(a)(6)(A)(i).  In certain enumerated "unusual circumstances," an agency may extend the deadline for a determination by ten business days, while also offering the requestor the opportunity to narrow their request. *Id.* § 552(a)(6)(B). After an agency makes an initial determination, such determination may be appealed administratively, and then to a district court.  *See id.* § 552(a)(4)(B).

For an agency to make a "determination," the agency "need not go so far as to produce the responsive documents but it must at least inform the requester of the scope of the documents it will produce and the exemptions it will claim with respect to any withheld documents." *Citizens for Responsibility & Ethics in Wash. v. FEC* ("*CREW*"), 711 F.3d 180, 185 (D.C. Cir. 2013) (Kavanaugh, J.).  More specifically, "the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *Id.* at 188; *accord Machado Amadis v. Dep't of State*, 971 F.3d 364, 372 (D.C. Cir. 2020).

Although FOIA requires exhaustion of administrative appeals before a requestor may seek judicial review of an agency's determination whether records are releasable, *Elec. Privacy Info. Ctr. v. IRS*, 910 F.3d 1232, 1238 (D.C. Cir. 2018), "[a]ny person making a request to any agency . . . shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit," 5 U.S.C. § 552(a)(6)(C)(i).  In other words, if the agency fails to make a determination within 20 business days or invokes the "unusual circumstances" provision but fails to make a determination within 30 business days, the requestor

14

may sue the agency in federal court to seek production of documents. *CREW*, 711 F.3d at 189-90 ("[I]f the agency does not adhere to FOIA's explicit timelines, . . . the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court."). After a requestor files suit, "[i]f the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records." 5 U.S.C. § 552(a)(6)(C)(i). "[T]he term 'exceptional circumstances' does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests." *Id.* § 552(a)(6)(C)(ii).

### B. Delay Can Constitute an Impermissible Policy or Practice

Defendants contend at the outset that they are entitled to summary judgment because "[d]elay alone, even repeated delay, is not the type of illegal policy or practice that is actionable under *Payne Enterprises*[*, Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988)]." Defs.' MSJ at 11 (italicization added) (quoting *Cause of Action Inst. v. Eggleston*, 224 F. Supp. 3d 63, 72 (D.D.C. 2016)). In defendants' view, the only remedy for delay in the processing of FOIA requests is "the right to file a lawsuit in district court and avoid administrative exhaustion requirements." *Id.* (citing *CREW*, 711 F.3d at 189 ("If the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court.")).

Contrary to defendants' position, the D.C. Circuit has made plain that "a plaintiff states a plausible policy or practice claim under *Payne* by alleging prolonged, unexplained delays in producing non-exempt records that could signal the agency has a policy or practice of ignoring FOIA's requirements." *Jud. Watch*, 895 F.3d at 780. Indeed, in *Judicial Watch*, the D.C. Circuit

15

found that an agency's "alleged practice of prolonged, repeated, and unexplained delay, if allowed to continue, would harm [plaintiff]" and was therefore actionable under FOIA. *Id*. at 782. Thus "prolonged, unexplained delays" can constitute a policy or practice in violation of FOIA. *Id.* at 780. As explained next, the ultimate success of the claim and availability of injunctive relief hinges on fact-specific questions about the reasons for the pattern of delay and the agency's efforts to improve.

### C.    Defendants Do Not Maintain a Policy or Practice of Violating FOIA's Timelines

Defendants further argue entitlement to summary judgment in their favor because "the record does not establish that Defendants maintain any sort of unlawful policy or practice as to how they handle FOIA requests." Def.'s MSJ at 12. Although the D.C. Circuit has "not spell[ed] out . . . the precise legal standard" for determining when a FOIA policy-and-practice claim based on delay is meritorious, *Wash. Lawyers' Comm. for C.R. & Urb. Affs. v. DOJ*, 145 F.4th 63, 70 (D.C. Cir. 2025), precedent provides some guideposts.

The ultimate question is "whether the agency's conduct in failing to conform to FOIA's procedural requirements demonstrates a lack of due diligence and is so delinquent or recalcitrant as to warrant injunctive relief because ordinary remedies, such as a production order, would be inadequate to overcome an agency policy or practice." *Wash. Lawyers' Comm.*, 145 F.4th at 70 (quoting *Jud. Watch*, 895 F.3d at 783). The D.C. Circuit has elaborated that "[a]n agency may be 'delinquent or recalcitrant' in meeting its FOIA obligations without rising to the level of bad faith," and, further, that "not all agency delay or other failure to comply with FOIA's procedural requirements will warrant judicial intervention." *Id.* "[A]n agency's invocation of factors like 'staffing shortages and work overload' do not by themselves necessarily 'render injunctive relief inappropriate,'" *id.* (quoting *Jud. Watch*, 895 F.3d at 783), though "exceptional circumstances"

16

may justify even numerous delays "when an agency . . . is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it 'is exercising due diligence' in processing the requests." *Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 612 (D.C. Cir. 1976).  In such exceptional circumstances, the practical and logistical obstacles to complying with FOIA time limits explain the compliance failure rather than a finding of an impermissible policy or practice of violating FOIA, and FOIA's built-in remedy for dealing with delays caused by "exceptional circumstances"—judicial supervision of individual cases—will suffice.  *See, e.g.*, *Democracy Forward Found. v. DOJ*, 354 F. Supp. 3d 55, 61 (2018) (finding "exceptional circumstances" based on a "sudden increase in requests" and retaining jurisdiction to supervise production).

Here, defendants' declarations establish that the agency has indeed been "deluged" over the last few years by an ever-increasing volume of requests.  *Open Am.*, 547 F.2d at 612.  Of note, the number of FOIA requests received annually by CBP increased threefold between 2016 and 2025, from 66,690 requests in FY 2016 to 207,396 in FY 2025.  Howard Decl. ¶ 33.  Defendants explain that "[o]ver the past decade, public awareness and use of the FOIA have increased," and "[t]he option to virtually submit requests has made submission easier and more efficient for requestors. *Id.* ¶ 31.  Between FY 2024 and FY 2025 alone, the number of FOIA requests jumped from 155,702 in FY 2024, which was already more than twice the FOIA requests received in FY 2016, to 207,396 in FY 2025.  *Id.* ¶ 33.  These dramatic jumps in the number of requests go beyond the "predictable agency workload" and constitute "exceptional circumstances" that justify some delays in FOIA processing.  5 U.S.C. § 552(a)(6)(C)(ii).  *See, e.g.*, *Ctr. for Public Integrity v. Dep't of State*, No. 05-cv-2313 (JDB), 2006 WL 1073066, at *4 (D.D.C. Apr. 24, 2006) (finding

exceptional circumstances when requests to agency increased from 3,355 annually to 4,602 annually over the course of eight years); *Daily Caller v. Dep't of State*, 152 F. Supp. 3d 1, 12 (D.D.C. 2015) (concluding that "nearly a 20% year-over-year increase . . . certainly removes the present increase from the ambit of a 'predictable agency workload'").

Defendants' declarations also establish that CBP and DHS are exercising "due diligence" in attempting to address these challenges, including by reaching an agreement with USCIS to divert certain FOIA consultations away from CBP, Howard Decl. ¶ 46, increasing staff time on FOIA processing, *id.* ¶¶ 47-48, tracking simple and complex requests separately, *id.* ¶ 40, and making technological updates by modifying the request form and using bots to assist with processing, *id.* ¶¶ 49-50. *See Informed Consent Action Network v. FDA*, No. 25-cv-823 (JEB), 2025 WL 2938703, at *4 (D.D.C. Oct. 16, 2025) ("Courts in this district have found that a 'first-in, first-out multitrack system for processing requests' . . . indicates due diligence."). Additionally, the Deputy FOIA Officer for DHS attests that since at least 2023, DHS has lent staff time to processing thousands of CBP FOIA requests. Pavlik-Keenan Decl. ¶ 5.

Plaintiffs respond to almost all of defendant's factual assertions by claiming that plaintiffs lack sufficient information to respond without discovery, but offer little, other than speculative possibility, that discovery may somehow rebut the presumption of good faith afforded to defendants' declarations. Plaintiffs cite to the D.C. Circuit's instruction that "[n]othing in FOIA suggests that a plaintiff in a FOIA policy or practice case must affirmatively demonstrate that the agency is acting in bad faith to survive summary judgment," Pls.' Disc. Mem. at 5 n.2 (quoting *Wash. Lawyers Comm.*, 145 F.4th at 70), but that directive speaks to the merits of a policy-or-practice claim, not to the appropriateness of relying on declarations from agency officials to establish facts about the agency's workload and ongoing efforts to address a backlog. *See Wash.*

18

*Lawyers' Comm. for C.R. & Urb. Affs. v. DOJ*, No. 23-cv-1328 (BAH), 2024 WL 1050498, at \*12 (D.D.C. Mar. 10, 2024), *aff'd sub nom. Wash. Lawyers' Comm.*, 145 F.4th 63 (D.C. Cir. 2025) (denying discovery in FOIA policy-or-practice claim because, while "permitting plaintiff to obtain discovery . . . could yield a lot more information[,] . . . [p]laintiff has suggested nothing to rebut the good faith afforded to defendant's declarations" (internal quotation marks to briefing omitted)).

In an additional push to call into question the good faith of defendants' declarations, plaintiffs also point to minor discrepancies between those declarations and defendants' published reports, as plaintiffs describe those reports in their statement of material facts, but none of these nits undermines the overall veracity and good faith of the declarations themselves. For instance, plaintiffs note that the Howard Declaration contains slightly different numbers as to the total number of FOIA requests in 2017 and 2021, compared to DHS's public reports about the same. Pls.' SMF ¶ 14. In particular, defendants' declarations report that in FY 2017, CBP received 88,937 FOIA requests, Howard Decl. ¶ 33, whereas the FY 2017 DHS report cited by plaintiffs lists 88,840 requests that year, Pls.' SMF ¶ 14 (citing *DHS 2017 Report* at 19); and defendants list 108,181 requests in FY 2021, Howard Decl. ¶ 33, whereas the public report for that year lists 108,177 requests for that year, Pls.' SMF ¶ 14 (citing DHS, *Fiscal Year 2021 Freedom of Information Act Report to the Att'y Gen.* 15 (2022)). These miniscule differences do not undermine the credibility of the government's declarations.

Similarly, plaintiffs argue that certain statements of material fact by defendants are not fully supported by defendants' declarations. They cite as an example that defendants' statement of material facts conveys that CBP has "improved" its training for new employees, whereas the declaration relied upon only says that CBP "reviewed" its training for new employees, Pls.' SMF ¶ 18, and defendants' statement of material facts conveys that CBP has "increased" the amount of

overtime approved for FOIA staff, whereas the declaration relied upon only says that CBP "periodically" approves overtime without saying whether such overtime has increased.  Pls.' SMF ¶ 19.  Even relying on the declarations themselves, rather than defendants' statement of material facts, defendants are entitled to summary judgment, so these small discrepancies are immaterial.

Giving defendants' declarations therefore a presumption of good faith, they demonstrate that CBP's admittedly substantial backlog of FOIA requests is the result of a deluge of requests far exceeding the agency's capacity to process them, rather than a policy or practice of violating FOIA's statutory deadlines, a conclusion confirmed by the defendants' attestations about developing various strategies to respond to the deluge that is wholly inconsistent with plaintiffs' alleged policy to do otherwise.

Plaintiffs attack this conclusion on three main grounds, none of which are successful.  First, and most broadly, they suggest solutions to the backlog that defendants have not taken and more generally that defendants have not "allocated sufficient staffing and budgetary resources to CBP's FOIA Division."  Pls.' SGI ¶ 1; Pls.' MSJ Opp'n at 15.  For example, plaintiffs query "whether the evaluation of FOIA staff includes any assessment of whether they resolve FOIA requests within the time period provided by the statute" and whether "the level of funding currently provided to process FOIA requests . . . has increased" in recent years.  Pls.' MSJ Opp'n at 17-19.  These inquiries do not create a genuine issue of material fact, however, because plaintiffs point to no authority indicating that under the policy-or-practice test set out by the D.C. Circuit, an agency must take all available measures to reduce delays.  Instead, the question is whether the agency is exercising "due diligence" to reduce its backlog, *Wash. Lawyers' Comm.*, 145 F.4th at 69 (quoting *Jud. Watch*, 895 F.3d at 783); *see also* 5 U.S.C. § 552(a)(6)(C)(i), and defendants' declarations indicate CBP and DHS are doing so in the face of a marked uptick in recent years of FOIA requests.

20

Plaintiffs' suggestion that defendant agencies must explain each and every decision about their FOIA program would invite micromanaging of agencies and go beyond FOIA's statutory text, which provides for extra time and judicial supervision of requests so long as the agency is diligent in completing those requests. *See* 5 U.S.C. § 552(a)(6)(C)(i); *see also Democracy Forward*, 354 F. Supp. 3d at 62 (rejecting FOIA plaintiffs' arguments about agency not acting with "due diligence" to reduce FOIA backlog because agency had "requested *less* total funding from Congress" in a particular year, because "it is not the role of the judiciary to question how executive agencies request and allocate resources, absent some compelling evidence of purposeful conduct" (emphasis in original)).

Second, plaintiffs note that two Judges in the Northern District of California, in two separate cases, allowed similar claims to proceed: one denied these same two defendants' motion to dismiss similar claims in 2015, and the other granted summary judgment to a class of plaintiffs alleging a policy or practice of delayed FOIA processing by DHS and other components: Immigration and Customs Enforcement and USCIS. *See* Pls.' MSJ Opp'n at 16-17 (citing *Brown v. CBP*, 132 F. Supp. 3d 1170 (N.D. Cal. 2015)); *id.* at 23-24 (citing *Nightingale v. USCIS*, 507 F. Supp. 3d 1193 (N.D. Cal. 2020)). Neither of these cases is either binding or persuasive here. Each decision applied the Ninth Circuit's interpretation of FOIA, which has articulated a different standard for policy-and-practice claims focused on "the effect on the public of disclosure and nondisclosure." *See Nightingale*, 507 F. Supp. 3d at 1207-08 (citing *Long v. IRS*, 693 F.2d 907, 909 (9th Cir. 1982)); *Brown*, 132 F. Supp. 3d at 1173) (citing same). In contrast, the D.C. Circuit's standard, binding on this Court, focuses on whether an agency is exercising "due diligence" in responding to an extraordinary influx of requests. *Wash. Lawyers' Comm.*, 145 F.4th at 69. In addition to being decided under a different standard, *Brown* involved a motion to dismiss, *Brown*,

132 F. Supp. 3d at 1172, and the bar for stating a plausible claim of an impermissible FOIA policy or practice is lower than that to survive summary judgment. These cases therefore do nothing to counsel against summary judgment in favor of defendants on the record in this case.

Third, plaintiffs argue that defendants have not shown that "an annual increase in FOIA requests—as opposed to inadequate funding, mismanagement, inadequate training, insufficient stop-gap measures, or a policy of treating FOIA's response timeframes as not mandatory, among other things—is the primary cause of the ever-increasing backlog," pointing in particular to the fact that, according to publicly available DHS FOIA reports "the backlog jumped by over 400%" between FY 2023 and FY 2024 "(from 21,444 to 110,271)," when FOIA requests between FY 2023 and FY 2024 "rose by only 23.56% (144,474 to 178,517)," Pls.' SGI ¶ 2 (citing *DHS 2024 Report* at 33), with the implication being that a slowdown in processing, rather than a (relatively) modest increase in requests led to an exploding backlog. This misapprehends the nature of a FOIA backlog: as requests come in and are not timely processed, they add cumulatively to the backlog list. Thus, some of the 144,474 requests made in FY 2023 may well be part of the backlog listed for FY2024. The same report cited by plaintiffs—indeed, the same chart in that report—reveals that CBP processed 148,760 requests in FY 2024, compared to only 89,727 in FY 2023, a more than 65% increase. *DHS 2024 Report* at 33. If anything, this backs up defendants' contention that CBP is exercising due diligence to manage its backlog of cases, despite ever-increasing requests pushing that figure skyward.

Certainly, the fact that individuals facing immigration proceedings can only obtain their own CBP records through the protracted FOIA process is concerning, but the lack of typical civil discovery in removal or other immigration proceedings is a problem for Congress, not this Court, to resolve. In any event, "the identity of the requesting party has no bearing on the merits of his

or her FOIA request," *DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 771 (1989), so the compelling reasons why plaintiffs seek these records does not affect the analysis of whether defendants have an unlawful policy or practice.

### C. Plaintiffs Are Not Entitled to Discovery Prior to Summary Judgment

In concert with their disputes of various facts asserted by defendants, plaintiffs seek discovery to support their opposition to defendants' summary judgment motion, pursuant to Federal Rule of Civil Procedure 56(d). The D.C. Circuit has set out the standard for ruling on Rule 56(d) discovery requests, explaining that the "movant must submit an affidavit which states with sufficient particularity why additional discovery is necessary," and satisfies three criteria: (1) "it must outline the particular facts the non-movant intends to discover and describe why those facts are necessary to the litigation"; (2) "it must explain why the non-movant could not produce the facts in opposition to the motion for summary judgment"; and (3) "it must show the information is in fact discoverable." *United States ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 26 (D.C. Cir. 2014) (quoting *Convertino v. DOJ*, 684 F.3d 93, 99 (D.C. Cir. 2012) (cleaned up)). Plaintiffs fail to meet this standard to state with sufficient particularity why additional discovery is warranted on the record in this case.

In the context of FOIA, the D.C. Circuit has made clear that discovery should be ordered "only 'where there is evidence—either at the affidavit stage or (in rarer cases) before—that the agency acted in bad faith in conducting the search.'" *Shapiro v. DOJ*, 40 F.4th 609, 615 (D.C. Cir. 2022) (quoting *In re Clinton*, 973 F.3d 106, 113 (D.C. Cir. 2020)). Even where an agency's declarations are inadequate to support summary judgment in FOIA litigation, courts have been instructed "that the appropriate remedy is usually to allow the agency to 'submit further affidavits' rather than to order discovery." *Id.* Plaintiffs argue that "[b]ecause this is a policy or practice case

23

(not an individual FOIA case), the general rule—that discovery is limited in FOIA cases—does not apply, and the Court should permit the parties to utilize the ordinary rules for discovery in civil cases." Pls.' Disc. Mem. at 4. The D.C. Circuit has not yet "decide[d] whether the FOIA-specific discovery standard applies to policy or practice claims in the same way it does to other FOIA cases." *See Wash. Lawyers Comm.*, 145 F.4th at 73 (affirming this Court's denial of discovery in FOIA policy-or-practice case while declining to announce the applicable standard). This Court is bound by the D.C. Circuit's holdings about the appropriateness of discovery in FOIA cases and declines to carve out an exception to that precedent on the record in this case.

Under the standard for FOIA discovery, plaintiffs have not shown that discovery is warranted here, for the same reason that plaintiffs have not rebutted the presumption of good faith afforded to defendants' declarations. Plaintiffs cite two cases in which discovery was permitted in non-policy-or-practice FOIA cases involving challenges to an agency's processing of the plaintiffs' FOIA requests, but neither is applicable here. In *Pulliam v. EPA*, 292 F. Supp. 3d 255, 260-61 (D.D.C. 2018), discovery was allowed where a government declarant submitted two sworn declarations that directly contradicted each other as to how a search was conducted. In *Citizens for Resp. & Ethics in Washington v. Dep't of Veterans Affs.*, 828 F. Supp. 2d 325, 333-34 (D.D.C. 2011), the government first stated that the agency had destroyed potentially responsive records after the filing of a FOIA request for those records, then reversed course and produced some but not all of the records supposedly destroyed. No such set of directly contradictory agency statements is present here. Indeed, plaintiffs point to no conflicting declarations or statements by the government, but rather simply object that plaintiffs cannot independently test the veracity of defendants' declarations. Under the FOIA discovery standard, these seemingly blanket objections are not enough. *See Bartko v. DOJ*, 898 F.3d 51, 74 (D.C. Cir. 2018) (according agency's

24

declarations "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents") (internal quotation and citation omitted); *SafeCard Servs.*, 926 F.2d at 1200.

In sum, defendants' declarations are sufficiently detailed to show that CBP's FOIA workload has increased substantially in recent years, that CBP and DHS have diligently worked to improve processing times, and that when CBP has failed to comply with FOIA's statutory guidelines for timing, these delays have been justified by "exceptional circumstances" going beyond the agency's "ordinary workload" and are therefore not part of a policy or practice of FOIA noncompliance.

\* \* \*

Defendants are entitled to summary judgment on plaintiffs' policy and practice claim, and therefore the question whether plaintiffs are entitled to class certification need not be reached.

## IV.    CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment, ECF No. 93, is **GRANTED**; plaintiffs' Motion for Discovery Pursuant to Federal Rule of Civil Procedure 56(d), ECF No. 102, is **DENIED**; and plaintiffs' Motion for Class Certification, ECF No. 88, is **DENIED AS MOOT**.    An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  May 18, 2026

_____
**BERYL A. HOWELL**
United States District Judge

25